983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard A. CASTILLO, Defendant-Appellant.
 No. 91-2425.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1992.
 
 Before KEITH and NATHANIEL R. JONES, Circuit Judges, and ALLEN, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Defendant-Appellant, Richard Castillo ("Castillo"), appeals the sentence imposed following his guilty plea to conspiracy to distribute quantities of cocaine and marijuana, in violation of 21 U.S.C. § 846. The district court sentenced Castillo to 168 months imprisonment followed by ten years of supervised release. For the reasons stated below, we AFFIRM the conviction and sentence.
 
 I.
 
 2
 On January 10, 1991, a federal grand jury indicted Castillo in a six-count indictment involving a narcotics trafficking conspiracy between August 1988 and November 1990. The charges were based, in part, on evidence that the authorities gained from a court authorized wiretap on the telephone at Castillo's residence. At his initial arraignment, on January 11, 1991, Castillo pled not guilty and was placed in custody by a Magistrate Judge.
 
 
 3
 On May 8, 1991, Castillo filed his "Motion To Suppress Evidence Derived From An Illegal Wiretap." In this motion, Castillo argued that, because the intercepted discussions consisted of personal conversations and did not involve criminal conduct, any information obtained must be suppressed. At the hearing on the motion on May 15, 1991, the district court denied his motion.
 
 
 4
 On May 16, 1991, Castillo and the government entered into a Rule 11 plea agreement. In the agreement, Castillo pleaded guilty to Count One of the indictment which read:
 
 COUNT 1
 
 5
 (21 USC § 846--Conspiracy)
 
 
 6
 That beginning approximately March of 1989, and continuing until approximately December 20, 1990, within the Eastern District of Michigan, Northern Division, RICHARD CASTILLO, JOHN OROZCO, MICHAEL REARDEN, RICK PENA, JAMES MUNGIA, ALBERT JIMINEZ, HARRY O'CAMPO and ROBERT VARGAS, defendants herein, did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree together and with other persons whose names are both known and unknown to the Grand Jury to commit an offense or offenses against the United States, that is, to possess with intent to distribute and to distribute various quantities of cocaine, a Schedule II Controlled Substance, and various quantities of marihuana, a Schedule I Controlled Substance, in violation of Sections 841(a)(1) and 846 of Title 21, United States Code.
 
 
 7
 It was a part of said conspiracy that JOHN OROZCO and RICHARD CASTILLO would obtain quantities of cocaine and marihuana and package and store sadi (sic) substances for distribution to others.
 
 
 8
 It was a further part of said conspiracy that ROBERT VARGAS would store quantities of cocaine at the direction of RICHARD CASTILLO.
 
 
 9
 It was a further part of said conspiracy that MICHAEL REARDEN, RICK PENA, JAMES MUNGIA, ALBERT JIMINEZ, and HARRY O'CAMPO would obtain quantities of cocaine and marihuana from RICHARD CASTILLO and JOHN OROZCO and distribute it to others, all in violation of Title 21, United States Code, section 846.
 
 
 10
 The Rule 11 agreement also provided that Castillo's sentence would not exceed the mid-point of the applicable guideline range; that Castillo would receive a two-point reduction in the base-offense level for acceptance of responsibility; that any fine imposed by the court would not exceed $20,000.00; that the Castillo's sentence would be followed by a term of ten years supervised release; and that the government would request a seventy-two (72) month reduction in his sentence if he provided substantial assistance to the government in the resolution of this case. The agreement, however, did not preserve any pretrial ruling for appeal, including Castillo's motion to suppress. Additionally, the government recommended a base offense level of 34 in the guideline worksheet attached to the plea agreement.
 
 
 11
 The district court reviewed the Presentence Report ("PSR") prepared by the probation department. The PSR recommended a base offense level of 34 because the conspiracy involved the distribution of both cocaine and marijuana. The PSR also reflected the view of the probation department that Castillo be given a four level increase for his role in the offense. The PSR also observes:
 
 
 12
 3. Part of the investigation included interviews with participants and some of their friends. Information indicates that the defendant was one of the biggest dealers in the Saginaw, Michigan area. CASTILLO owned a Ferrari, a Chevrolet Blazer, and a Chevrolet Corvette, all of which were paid for with cash, although he had no visible means of support. These vehicles were registered in other peoples' names to avoid seizure in case of arrest.
 
 
 13
 4. Information reveals that on May 11, 1989, the defendant and John Orozco attempted to depart from Metro Airport in Detroit for El Paso, Texas. As a result of a search, John Orozco was found to have $24,000.00 in a case.
 
 
 14
 5. A Federal search warrant was executed at CASTILLO'S father's residence. A total of $55,000.00 was seized from a safe located at the father's home.
 
 
 15
 6. The Government concludes that the organization distributed 42 kilos of cocaine and 3,800 kilos of marijuana during its existence. This information is based upon a debriefing interview of Robert Vargas who identified the actual conspiracy activity beginning in August of 1988 through November, 1990. He adds that during this period an average of 300 pounds of marijuana per month was being imported into Saginaw by CASTILLO and Orozco. He further advised that during the same time period, CASTILLO was importing an average of one (1) to two (2) kilograms of cocaine per month. Vargas' position in the conspiracy was to store all the drugs.
 
 
 16
 On July 18, 1991, Castillo filed objections to the PSR challenging the four level increase and the calculated guideline range.
 
 
 17
 On September 16, 1991, following the probation officer's failure to alter or amend the PSR, Castillo moved for an evidentiary hearing challenging the PSR's calculation of the quantity of the drugs involved. In this motion, Castillo alleged that the conspiracy involved five (5) to fifteen (15) kilograms of narcotics rather than the higher amount suggested by the PSR.
 
 
 18
 On September 18, 1991, the district court tentatively accepted the recommendations of the PSR in a letter sent to the parties. On October 3, 1991, Castillo filed a request for an evidentiary hearing in which he wanted to call a witness to testify with regard to the amount of narcotics involved in the conspiracy. Pursuant to the Rule 11 plea agreement, on October 4, 1991, the government moved for the downward departure of seventy-two (72) months in Castillo's sentence for his substantial assistance throughout the proceedings. On December 9, 1991, the district court sentenced Castillo. At the beginning of the sentencing hearing, the record indicates that Castillo withdrew his motion for an evidentiary hearing.[2] The district court proceeded to sentence Castillo to a two hundred-forty (240) month minimum sentence reduced by the requested seventy-two (72) month substantial assistance departure. The resultant sentence was 168 months imprisonment followed by ten years of supervised release. This timely appeal followed.
 
 II.
 
 19
 On appeal, Castillo challenges the calculation of his base offense level at 34. He also asserts that his motion to suppress the court authorized wiretap was improperly denied. We address each claim below seriatim.
 
 A.
 
 20
 The government argues that Castillo has waived any objection that he may have had to the calculation of the base offense level because he failed to file a timely objection to the claim, in violation of the Local Rules of the Eastern District of Michigan. The district court correctly entertained the motion and overruled Castillo's objections in its September 18, 1991, letter. The court observed that Castillo was actually arguing that the calculation of the base offense level was "not in keeping" with the Rule 11 plea agreement. The district court then properly determined "that the agreement reserves to the Court the authority to calculate and the Court similarly informed the defendant upon his entry of the plea of guilty. The suggestions of the Probation Officer are therefore to be accepted."
 
 
 21
 The government next contends that Castillo waived this issue on appeal because Castillo abandoned the issue when he withdrew his request for an evidentiary hearing on the issue at sentencing. Prompted by the district court, Castillo's counsel indicated that the motion for evidentiary hearing was indeed withdrawn and that Castillo wished to proceed with sentencing. The government argues that Castillo affirmatively withdrew, and thus abandoned, his objection to the base offense level calculation. This Circuit, however, has previously determined that where a proper objection to the PSR has been filed, the defense need not register an additional objection at the sentencing hearing to preserve it on appeal. See United States v. Edgecomb, 910 F.2d 1309, 1313-14 (6th Cir.1990).
 
 
 22
 Reviewing this claim on the merits, this court must scrutinize any factual determination by the trial court for clear error. United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 111 S.Ct. 532 (1990). With regard to the quantities of cocaine and marijuana involved, the district court adopted the findings of the PSR. Castillo contends that the evidence, representations by his co-conspirator, Robert Vargas, were not a sufficient basis for the imposed base offense level. Castillo claims that the evidence was double hearsay and not admissible citing United States v. Fortier, 911 F.2d 100 (8th Cir.1990). In Fortier, the Eighth Circuit determined that statements by an unnamed confidential informant to a third party that the defendant was responsible for a certain quantity of drugs was multiple hearsay and lacked sufficient indicia of "reliability".
 
 
 23
 U.S.S.G. § 6A1.3(a) states that in "resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to is admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." (emphasis added)
 
 
 24
 In this case, Robert Vargas purportedly stored all of the narcotics distributed by the conspiracy. Thus, Vargas should have known with a reasonable degree of certainty the quantity of drugs that he handled within a given time period during the conspiracy. Accordingly, this Court cannot say that the district court committed clear error when it adopted the PSR calculation. See also, United States v. Wilson, 920 F.2d 1290, 1295 (6th Cir.1990) (holding that the factual findings required by Fed.R.Crim.P. 32 can be satisfied by adopting the presentence report).
 
 
 25
 Moreover, Castillo's contention that he should not be liable for the entire amount of narcotics distributed in the conspiracy must fail. Co-conspirators can be held accountable for their own conduct and the "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." See Application Note 1 to U.S.S.G. § 1B1.3. Accordingly, the district court did not commit error in holding Castillo accountable for the quantity of drugs calculated in the PSR. Thus, the base offense level calculation of 34 should be affirmed.
 
 B.
 
 26
 Castillo also contends that the denial of his motion to suppress evidence acquired as a result of the court authorized wiretap was improper. This challenge is governed by the principles that underpin Rule 11 plea agreements. Fed.R.Crim.P. 11(a)(2) "permits a defendant to enter a conditional plea of guilty or nolo contendere while preserving the right 'on appeal from the judgment, to review of the adverse determination of any specified pretrial motion.' " United States v. Pickett, 941 F.2d 411, 415 (6th Cir.1991).[3] This rule operates on the background of the general proposition of Tollett v. Henderson, 411 U.S. 258 (1973), which states that a defendant's plea of guilty or nolo contendere forecloses all subsequent non-jurisdictional appeals. See Tollett, 411 U.S. at 262-66. This Court observed in Pickett that the Rule 11 conditional plea practice was enacted to mitigate the harshness of the Tollett rule. Pickett, 941 F.2d at 417.
 
 
 27
 For our purposes, the operative phrase in the conditional plea rule is "specified pretrial motions". The Pickett Court chose to interpret this phrase in the manner which "places an affirmative duty on the defendant to preserve all potential collateral challenges through the preservation mechanism of Rule 11(a)(2)." Pickett, 941 F.2d at 416. The Pickett court was faced with the defendant's contention that his prosecution in the federal court was commenced in violation of the Speedy Trial Act and that his federal indictment violated the due process clause of the Fourteenth Amendment. Because the defendant failed to enter a conditional plea which specified these issues and, therefore, preserved them for review, the Pickett Court determined that the operation of Rule 11(a)(2) barred the presentation of these arguments.
 
 
 28
 In the case-at-bar, Castillo's plea agreement did not contain an express reservation of his right to appeal the denial of his motion to suppress. His failure to enter a conditional plea which specifically preserves this issue for review deprives this Court of jurisdiction to evaluate the merits of his claim. See United States v. Pickett, 941 F.2d 411, 415-17. Accordingly, this contention must be dismissed.
 
 III.
 
 29
 For the foregoing reasons, we AFFIRM the conviction and sentence imposed by the Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan.
 
 
 
 *
 The Honorable Charles W. Allen, Senior District Judge for the Western District of Kentucky, sitting by designation
 
 
 [2]
 The transcript of the proceedings reads as follows:
 THE COURT: It is my further understanding, Mr. Sturtz, that the defendant's motion, something titled motion for request for evidentiary hearing, which was intended to have been pursued this afternoon, is withdrawn; correct?
 MR. STURTZ: Yes, your Honor.
 THE COURT: And it is my understanding further that defendant intends to go forward with sentencing here, understanding that the Court will finalize the tentative findings that were expressed in my letter pursuant to Rule 39F. Is that also correct, sir?
 MR. STURTZ: Yes. I would further indicate to the Court we've discussed this matter on a previous record, and that was my client's understanding and his wishes to proceed.
 THE COURT: Yes. The Court is quite clear about that.
 
 
 [3]
 This Court noted that the entry of a conditional plea is designed "to permit a 'defendant who has lost one or more pretrial motions' from going 'through an entire trial simply to preserve the pretrial issues for later appellate review.' " United States v. Pickett, 941 F.2d 411, 416 (6th Cir.1991) (citing the Notes of the Advisory Committee on Rules for the 1983 Amendments to Rule 11(a), reprinted in 18 U.S.C.A.Rules 1-11 at 359)