65 F.3d 177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Lee LARSEN, Defendant-Appellant.
 No. 94-50331.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 10, 1995.*
Decided Aug. 16, 1995.
 
 Before: BROWNING and BEEZER, Circuit Judges, and JONES, District Judge.**
 MEMORANDUM***
 Defendant Thomas Lee Larsen appeals the sentence imposed by the district court after he pled guilty to six counts of threatening to commit arson in violation of 18 U.S.C. Sec. 844(e). As pertinent, the district court sentenced Larsen to 40 months imprisonment on each count of conviction, to run concurrently. The court rejected Larsen's argument that the counts should group under the Sentencing Guidelines, U.S.S.G. Sec. 3D1.2. The court also refused to allow Larsen to attack the constitutionality of a prior state court conviction, which Larsen alleged was the product of ineffective counsel.
 We affirm. Each separate recipient of Larsen's threatening letters properly is considered a primary victim under U.S.S.G. Sec. 3D1.2, and the district court did not err in refusing to group the counts of conviction. The United States Supreme Court decision in Custis v. United States, --- U.S. ----, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), and our court's recent decisions in United States v. Fondren, 32 F.3d 429, amended and superseded by 43 F.3d 1228, amended and superseded by 54 F.3d 533 (9th Cir.1994), and United States v. Burrows, 36 F.3d 875 (9th Cir.1994), foreclose Larsen's argument that he should have been allowed to challenge the prior state court conviction at the time of sentencing.
 FACTS AND PROCEEDINGS BELOW
 On approximately August 30, 1993, Larsen sent a number of copies of a letter signed "Fedbuster" to residences and fire stations in the Los Angeles area. In the letters, Larsen threatened to set a series of fires on a hot, windy day during the volatile fire season, and to shoot small children with a high-powered rifle. The letters expressed Larsen's anger at the criminal justice system in general, and specifically at the judge, prosecutors, and agents involved in a prior criminal case.
 
 
 1
 On approximately the same date, Larsen allegedly sent two other letters. He mailed the first, signed "Nitecrawler," to a number of residences and preschools in the Los Angeles area. In the "Nitecrawler" letter, Larsen threatened to poison meat and baby food on a large scale. In the second letter, which he sent to a number of people in the Los Angeles area, Larsen threatened to kill his former attorney, the attorney's wife, and their two children.
 
 
 2
 Larsen was indicted on 77 counts of sending threatening letters. Counts one through 37 charged him with threatening to commit arson in violation of 18 U.S.C. Sec. 844(e). Counts 38 through 70 charged him with threatening to tamper with consumer products in violation of 18 U.S.C. Sec. 1365. Counts 71 through 77 charged him with mailing threatening communications in violation of 18 U.S.C. Sec. 876. Larsen pleaded guilty to six counts of sending threatening letters. Larsen had sent the six letters involved in the plea to separate Los Angeles City or County fire stations.
 
 
 3
 In the presentence report, the probation office calculated that Larsen's base offense level under U.S.S.G. Sec. 2A6.1 was 12, that he should receive a five-level upward adjustment for multiple counts, and that he should receive a three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of 14. The probation office calculated that Larsen was in criminal history category V, but found that he was a career offender under U.S.S.G. Sec. 4B1.1, placing him in criminal history category VI.
 
 
 4
 At the sentencing hearing, the district court found that Larsen was not a career offender, but otherwise agreed with the presentence report. The court rejected Larsen's argument that the six counts of conviction should group. The court also refused to allow Larsen to attack the constitutionality of a prior state court conviction. The court sentenced Larsen to 40 months imprisonment, which was within the guideline range.
 
 STANDARDS OF REVIEW
 
 5
 We review the district court's application of the Sentencing Guidelines de novo. United States v. Hines, 26 F.3d 1469, 1474-75 (9th Cir.1994) (district court decision regarding grouping of offenses involves application of Guidelines and is reviewed de novo). Whether the Guidelines permit a collateral attack on a prior conviction is a legal issue we also review de novo. United States v. Wilson, 900 F.2d 1350, 1355 (9th Cir.1990).
 
 DISCUSSION
 1. Grouping of Offenses
 
 6
 Larsen argues that the counts of conviction should have been grouped under U.S.S.G. Sec. 3D1.2 because his conduct "involved the very same act and, in essence, the same victim." Larsen contends that the victim of his conduct was society at large, not the individuals who received and read the threatening letters. In the alternative, Larsen argues that the recipients of the letters were not separate victims because three of the fire stations were part of one fire department, and three were part of another.
 
 
 7
 U.S.S.G. Sec. 3D1.2 provides, in pertinent part:
 
 
 8
 All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
 
 
 9
 (a) When counts involve the same victim and the same act or transaction.
 
 
 10
 (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
 
 
 11
 Application Note 2 to U.S.S.G. Sec. 3D1.2 provides:
 
 
 12
 The term "victim" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related....
 
 
 13
 As Application Note 2 clarifies, the notion of society at large as the victim comes into play only when "there are no identifiable victims." In this case, unlike "victimless" drug and immigration offenses, there are identifiable victims: the recipients of Larsen's threatening letters who were "directly and most seriously affected by the offense."
 
 
 14
 Larsen argues that neither the fire stations nor the individuals who read the letters qualify as "primary victims," because his threats were not directed toward them. Relying on two cases, United States v. Norman, 951 F.2d 1182 (10th Cir.1991), and United States v. Wilson, 920 F.2d 1290 (6th Cir.1990), Larsen contends that the point of his scheme was not to cause harm to the fire stations, but to "use them merely as his tool to seek 'justice.' "
 
 
 15
 In United States v. Norman, the defendant repeatedly made false reports to an airline that a certain passenger, against whom the defendant harbored a grudge, was carrying a handgun and explosives. The court held that the passenger, rather than the airline employees who took the calls, was the primary victim of the criminal scheme. 951 F.2d at 1185. Commenting that the defendant did not target the airline for harm, the court "logically assumed" that had the intended victim chosen another airline for his trip, "that airline would have become the means by which the defendant visited his mischief upon his victim." Id. (footnote omitted).
 
 
 16
 In United States v. Wilson, the defendant made five telephone calls and mailed one letter in an effort to hire someone to murder his wife. The court concluded that the six separate acts must be grouped because the wife was the victim of all six acts and all six acts had the same objective: her death. 920 F.2d at 1294.
 
 
 17
 United States v. Norman and United States v. Wilson are distinguishable because in this case, there was no primary victim other than the recipients of the threatening letters. Nor can it be said that Larsen's offenses were "victimless" offenses, in the sense that drug and immigration offenses may be victimless (see Application Note 2). While Larsen may not have threatened to harm the fire stations or their occupants directly, the threat of arson must inevitably cause fire professionals some degree of concern and distress. We also reject Larsen's suggestion that because three of the six fire stations are part of the Los Angeles City Fire Department and the other three are part of the Los Angeles County Fire Department, there were only two victims. Larsen sent his letters to six separate fire stations at six separate addresses.
 
 2. Collateral Attack on Prior Conviction
 
 18
 Larsen argues that the Sentencing Guidelines allowed him to challenge a 1987 state court conviction for assault, which he claims was constitutionally invalid due to ineffective assistance of counsel.[1] The district court rejected his collateral attack on the state court conviction in light of Custis, supra.
 
 
 19
 In Custis, the Supreme Court held that defendants have no statutory or constitutional right to attack a prior state court conviction used for sentence enhancement under the Armed Career Criminal Act of 1984 ("ACCA"), at the time of sentencing, except in the limited circumstance of a conviction obtained in violation of the right to counsel. Custis, --- U.S. at ----, 114 S.Ct. at 1738-39. In Fondren, supra, we specifically addressed the issue of whether the Sentencing Guidelines provide an independent source of authority for a collateral challenge to a predicate state conviction at the time of an ACCA hearing, and held that they do not. Fondren, 54 F.3d at 535.
 
 
 20
 Unlike the defendants in Custis and Fondren, Larsen was sentenced under the Sentencing Guidelines, not the ACCA. In Burrows, supra, however, we held that a defendant sentenced under the Sentencing Guidelines has "no right conferred by the Sentencing Guidelines to attack his prior convictions in his sentencing proceeding...." Burrows, 36 F.3d at 885. Burrows is binding on us, and forecloses Larsen's argument that he was entitled to collaterally attack his 1987 assault conviction at the time of his sentencing.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 The Honorable Robert E. Jones, United States District Judge, District of Oregon, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Three of the 10 criminal history points that placed Larsen in criminal history category V were attributed to the 1987 conviction