United States Court of Appeals,

Eleventh Circuit.

Nos. 94-8660, 94-8713.

UNITED STATES of America, Plaintiff-Appellee,

v.

John Wesley BONNER, Defendant-Appellant.

June 13, 1996.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:93-cr-461-1), Richard C. Freeman, Judge.

Before BIRCH, Circuit Judge, and CLARK and WEIS [*], Senior Circuit Judges.

CLARK, Senior Circuit Judge:

In 1989, defendant John Wesley Bonner pled guilty to attempted bank robbery (No. 1:89-00298-CR-1), and was sentenced to 33 months imprisonment and 3 years supervised release. Assistant United States Attorney Janet F. King handled the prosecution. Defendant was released from prison and began serving his term of supervised release on May 19, 1992.

From October 9, 1992, until October 25, 1993, defendant made twenty anonymous, threatening telephone calls to Assistant U.S. Attorney King from pay telephones in the Atlanta, Georgia area. During the telephone calls, defendant made the following threats:

"You have caused me a lot of misery and I will cause you some soon."

"I'm going to get you."

"You've got a old debt to pay."

---

[*]Honorable Joseph F. Weis, Jr., Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

"I'm going to destroy you."

"I'm gonna cut you open."

"Your time is about up honey."

"Your existence bothers me."

Defendant made the second of two calls on October 25, 1993, from a pay phone in view of Federal Bureau of Investigation agents who were conducting surveillance, and was immediately arrested. He was indicted on twenty counts of threatening to assault and murder an Assistant U.S. Attorney in retaliation for her previous prosecution of him, in violation of 18 U.S.C. § 115(a)(1)(B) (No. 1:93-CR-461-1). A petition for violation of his supervised release term based on his arrest was filed in his earlier conviction.

Defendant pled guilty to all twenty counts in the indictment. The district court overruled the defendant's objection that the threatening calls should be grouped because they were all part of the same course of conduct, and gave him a five-level adjustment for multiple counts under U.S.S.G. § 3D1.4. Defendant was sentenced to 37 months imprisonment, one year supervised release, and a $1,000 special assessment, and appealed, our case No. 94-8660.

The district court subsequently revoked his term of supervised release in the attempted bank robbery conviction. The district court found that the defendant's threats of "I'm going to cut you open, I want revenge, it won't be long now" fell within the § 4B1.2 definition of crime of violence and, therefore, within a Grade A violation as defined by U.S.S.G. § 7B1.1(a). Defendant was sentenced to 15 months imprisonment consecutive to the term of

imprisonment in the threats conviction. Defendant appealed, our case No. 94-8713. This court consolidated the two appeals.

DISCUSSION

A. Multiple Count Adjustment

Bonner argues that all the acts or telephone calls were connected by the common criminal objective of threatening the victim, and constituted a single offense involving substantially the same harm to the same victim, although over a period of a year. He contends that, despite the exclusion from grouping under U.S.S.G. § 3D1.2(d), the counts could still be grouped under § 3D1.2(b). Bonner maintains that his case is distinguishable from those where multiple acts of violence occur to the same victim on different occasions because he did not act on his threats.

If a defendant is convicted of multiple counts, the guidelines require the sentencing court to group closely related counts.[1] "All counts involving substantially the same harm shall be grouped together in a single Group."[2] Multiple counts involve

---

[1] U.S.S.G. § 3D1.1. *Procedure for Determining Offense Level on Multiple Counts.*

> (a) When a defendant has been convicted of more than one count, the court shall:
>
> (1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.
>
> (2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.
>
> (3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

[2] U.S.S.G. § 3D1.2.

substantially the same harm when the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.[3]  However, all offenses covered under Chapter Two, Part A are specifically excluded from grouping under § 3D1.2(d).[4]  Thus, because the defendant's offense level was computed under § 2A6.1(a), i.e., Chapter Two, Part A, the counts were excluded from grouping under subsection (d).  This, however, does not necessarily preclude grouping under another subsection.[5]

Under § 3D1.2(b), counts involve substantially the same harm "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan."[6]  "[C]ounts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are

---

[3]U.S.S.G. § 3D1.2.  *Groups of Closely Related Counts.*

> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

> Specifically excluded from the operation of this subsection are:

> all offenses in Chapter Two, Part A;

[4]*Id.*

[5]U.S.S.G. § 3D1.2(d).

> Exclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection.

[6]U.S.S.G. § 3D1.2(b).

to be grouped together, even if they constitute legally distinct offenses occurring at different times."  [7]  However, multiple, separate instances of fear and risk of harm, not one composite harm, occur when the defendant robs or rapes the same victim on different occasions and the offenses are not to be grouped together.[8]  Also, in an example given in the guidelines, where "[t]he defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days[,] the counts *are not* to be grouped together."[9]  The decision on whether to group several counts involving the same victim is not always clear cut, and although existing case law may provide some guidance, courts should look to the underlying policy as stated in the Guidelines' Introductory Commentary.[10]  The Introductory

---

[7]U.S.S.G. § 3D1.2, comment. (n. 4).

[8]U.S.S.G. § 3D1.2, comment. (n. 4):

> ... This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (*e.g.,* robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm).

[9]U.S.S.G. § 3D1.2, comment. (n. 3).

[10]U.S.S.G. § 3D1.2, comment. (n. 8):

> 8. A defendant may be convicted of conspiring to commit several substantive offenses and also of committing one or more of the substantive offenses.

> *Background:*  Ordinarily the first step in determining the combined offense level in a case involving multiple counts is to identify those counts that are sufficiently related to be placed in the same Group of Closely Related Counts ("Group").

> Even if counts involve a single victim, the

Commentary recognizes that different rules are required for dealing with multiple-count convictions involving offenses with repetitive and ongoing behavior and those that are oriented more toward single episodes of behavior.[11] This court reviews a district court's refusal to group multiple counts of conviction with due deference.[12]

Other circuits have addressed this issue. In *United States v. Wilson*,[13] the defendant contacted an ex-girlfriend to hire someone to kill his wife. The defendant pled guilty to six counts of use of interstate facilities with the intent that his wife be killed by making five telephone calls and mailing one letter to his ex-girlfriend over a two-week period.[14] The sentencing court

---

decision as to whether to group them together may not always be clear cut.... Existing case law may provide some guidance as to what constitutes distinct offenses, but such decisions often turn on the technical language of the statute and cannot be controlling. In interpreting this Part and resolving ambiguities, the court should look to the underlying policy of this Part as stated in the Introductory Commentary.

[11]U.S.S.G. Ch. 3, Pt. D, intro. comment:

Some offense guidelines, such as those for theft, fraud and drug offenses, contain provisions that deal with repetitive or ongoing behavior. Other guidelines, such as those for assault and robbery, are oriented more toward single episodes of criminal behavior. Accordingly, different rules are required for dealing with multiple-count convictions involving these two different general classes of offenses.

[12]*See United States v. Beard,* 960 F.2d 965, 969 (11th Cir.1992).

[13]920 F.2d 1290 (6th Cir.1990), appeal after remand, 978 F.2d 1260 (6th Cir.1992), *cert. denied,* 508 U.S. 919, 113 S.Ct. 2365, 124 L.Ed.2d 272 (1993).

[14]*Id.* at 1293.

refused to group the counts.[15]  The Sixth Circuit vacated, holding that grouping under § 3D1.2(b) was required because the separate acts created a single "harm." [16]  The court reasoned that the defendant's wife was "the victim of all six acts and the six acts involved the same objective:  her death."[17]

In *United States v. Norman,*[18] the defendant pled guilty to making two false reports over a two-day period to an airline claiming that his ex-wife's suitor was aboard a plane carrying a firearm and explosives.  After the third false report, airport security officers located the suitor, removed him from the airplane in handcuffs, questioned him, and released him.[19]  The sentencing court refused to group the counts.[20]  The Tenth Circuit vacated, holding that the counts should have been grouped under § 3D1.2(b).  Relying on *Wilson,* the court determined that the scheme had only one course of conduct (making false reports to the airline);  only one criminal objective (to harm the suitor);  and only one composite harm to one victim (subjecting the suitor to arrest).[21]

In *United States v. Miller,*[22] the defendant mailed threatening

---

[15]*Id.*

[16]*Id.* at 1294.

[17]*Id.*

[18]951 F.2d 1182 (10th Cir.1991).

[19]*Id.* at 1183.

[20]*Id.*

[21]*Id.* at 1186.

[22]993 F.2d 16 (2nd Cir.1993).

letters to the victim over a four-month period. [23] The Second Circuit affirmed the refusal to group the counts under § 3D1.2(b), reasoning that, although the letters were arguably part of a common scheme of harassment, the sentencing court properly found that each letter inflicted separate psychological harm.[24]

The circumstances in *Wilson* and *Norman* are distinguishable from this case. In *Wilson,* each telephone call, a legally separate crime in itself, was part of a single course of conduct leading up to the end result or single objective and one composite harm: the hiring of someone to kill the defendant's wife. Similarly, in *Norman,* each false report, again a crime in itself, was a single course of conduct leading up to the single criminal objective and one composite harm: the arrest of the victim. Accordingly, in *Wilson* and *Norman,* once the single purpose of each scheme and one harm—the hiring of someone to kill the defendant's wife and the arrest of the suitor of the defendant's wife—were accomplished, the schemes terminated. However, in the present case, there were multiple purposes and harms because the defendant did not terminate his scheme after he harassed the victim with the first telephone call. Also in *Wilson* and *Norman,* the defendants never had any contact with the victims of the scheme, but rather only third-parties. Therefore, in *Wilson* and *Norman,* unlike the present case, the defendants never created multiple, separate instances of fear in the victims of those schemes.

The situation in this case appears similar to the situation in

---

[23]*Id.* at 19, 21.

[24]*Id.* at 21.

*Miller.* In *Miller,* as in this case, each separate threatening communication, a crime in itself, had a single purpose or objective and inflicted one composite harm: to harass the victim. The scheme in *Miller,* as in this case, had multiple purposes and harms because the defendant did not terminate his scheme after he harassed the victim with the first threatening communication. Therefore, although the threatening communications were arguably part of a common overall scheme of harassment, the victim in this case suffered separate and distinct instances of fear and psychological harm with each separate threatening communication. The district court properly refused to group the twenty counts under § 3D1.2(b).

B. Crime of Violence

The defendant argues that making a threatening telephone call is not a "crime of violence," a Grade A violation, but rather a Grade B violation. He contends that, under *United States v. Philibert,*[25] making threats does not constitute a "crime of violence." He also maintains that his conduct was non-violent because he only harassed the victim and never attempted to accomplish his threats.

When an individual on supervised release commits a Grade A or B violation, the court must revoke supervised release, and use the sentencing table in § 7B1.4 to determine the applicable range of imprisonment.[26]

---

[25]947 F.2d 1467 (11th Cir.1991).

[26]U.S.S.G. § 7B1.3. *Revocation of Probation or Supervised Release* (Policy Statement).

A "Grade A" violation is defined as "conduct constituting a federal, state, or local offense punishable by a term of imprisonment exceeding one year that is a crime of violence."[27] The term "crime of violence" as used in § 4B1.1 and defined in § 4B1.2 is the applicable definition.[28] Under § 4B1.2(1), "the term "crime of violence' means any offense under federal or state law punishable by imprisonment for a term exceeding one year that has as an element the use, attempted use, or threatened use of physical force against the person of another."[29] A "Grade B" violation is defined as "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year."[30]

In *United States v. Russell,*[31] this court relied on the § 4B1.2 definition and held that armed robbery was a crime of violence

---

    (a)(1) Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release.

    (b) In the case of a revocation of probation or supervised release, the applicable range of imprisonment is that set forth in § 7B1.4 (Term of Imprisonment).

[27]U.S.S.G. § 7B1.1(a)(1)(i).

[28]U.S.S.G. § 7B1.1, comment. (n. 2):

*Application Notes:*

2. "Crime of violence" is defined in § 4B1.2 (Definitions of Terms Used in Section 4B1.1). *See* § 4B1.2(1) and Application Notes 1 and 2 of the Commentary to § 4B1.2.

[29]U.S.S.G. § 4B1.2(1).

[30]U.S.S.G. § 7B1.1(a)(2).

[31]917 F.2d 512, 517 (11th Cir.1990), *cert. denied,* 499 U.S. 953, 111 S.Ct. 1427, 113 L.Ed.2d 479 (1991).

because the use or threatened use of force was an element of the crime, and a departure under § 5K2.13 (departure for diminished capacity if non-violent offense is committed) was not allowed. In *Philibert*,[32] however, this court determined that Philibert's threatening telephone call was a "non-violent crime" and a downward departure was available under U.S.S.G. § 5K2.13. In *United States v. Dailey*,[33] Dailey was convicted of interstate travel with intent to carry out extortion. The sentencing court departed downward based on diminished capacity, and the government appealed, arguing that a downward departure was not available because Dailey was convicted of a crime of violence. [34] This court vacated and remanded, holding that a departure based on diminished mental capacity was not available because Dailey was convicted of a crime of violence. The panel, recognizing the conflict between *Russell* and *Philibert*, determined that *Russell* was controlling law.[35]

At sentencing, the defendant did not dispute the fact that he threatened to use physical violence against the victim. Because the use or threatened use of force is an element of the crime and he threatened to use violence, making a threatening telephone call

---

[32]947 F.2d at 1471.

[33]24 F.3d 1323, 1327 (11th Cir.1994).

[34]*Id.* at 1324.

[35]*Id.* at 1327. The defendant also refers us to *United States v. Barbour*, 70 F.3d 580, 587 (11th Cir.1995), *cert. denied*, --- U.S. ----, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996), which cited *Philibert.* However, the issue in *Barbour* involved an enhancement under U.S.S.G. § 2A6.1(b)(1). The *Barbour* court held that, under *Philibert*, there must be an evidentiary basis showing that the defendant's conduct evidenced an intent to carry out the threat to justify enhancement. There was no such enhancement in this case.

is a crime of violence under § 4B1.2.  Therefore, the district court did not err in finding that the defendant committed a Grade A violation of his supervised release.

## CONCLUSION

For the reasons stated above, the defendant's convictions and sentences are AFFIRMED.

*    *    *    *    *    *

*    *    *    *    *    *

*    *    *    *    *    *

*    *    *    *    *    *

*    *    *    *    *    *

*    *    *    *    *    *