**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5969

CLAYTON PERRY CROWE,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Bryson City.
Lacy H. Thornburg, District Judge.
(CR-94-32)

Submitted: January 7, 1997

Decided: February 7, 1997

Before NIEMEYER and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Stephen P. Lindsay, John C. Hensley, Jr., LINDSAY & HENSLEY,
Asheville, North Carolina, for Appellant. Mark T. Calloway, United
States Attorney, Deborah A. Ausburn, Assistant United States Attor-
ney, Asheville, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Clayton Perry Crowe, a member of the Cherokee Indian tribe, was convicted of twelve counts of mailing threatening communications in violation of 18 U.S.C. § 876 (1994) and sentenced to twelve consecutive sixty-month sentences. Crowe raises ten issues on appeal: (1) whether the district court erred by denying his motion for production of the victim's mental health records; (2) whether the district court abused its discretion by allowing evidence of the underlying assault; (3) whether the district court manipulated the Sentencing Guidelines[1] to arrive at a pre-determined sentence; (4) whether his offenses should have been grouped pursuant to USSG § 3D1.2(b); (5) whether the district court erroneously increased his base offense level for conduct evidencing an intent to carry out a threat; (6) whether the district court should have given him a two-point enhancement under USSG § 3A1.1 for preying on a vulnerable victim; (7) whether the district court erred when it departed from the Sentencing Guidelines based on inadequacy of his criminal history category; (8) whether the district court erred by granting an upward departure based on extreme psychological injury; (9) whether the district court erred by granting an upward departure based on extreme conduct; and (10) whether the district court committed reversible error by ordering him to make restitution and reimburse the Government for court-appointed attorney's fees. Finding no reversible error, we affirm.

Crowe married Nikki Moore ("Nikki") in 1975, and the couple lived on a reservation in North Carolina and eventually had two daughters. By 1991, the marriage had seriously deteriorated. Crowe was abusive and was treated for alcohol and drug abuse. There was also evidence that Nikki had been unfaithful. Nikki moved out of the marital home in October 1991, taking the children with her.

_____

[1] United States Sentencing Commission, Guidelines Manual (Nov. 1995).

2

In December 1991, Crowe walked into the pediatricians' office, where Nikki worked as a nurse, and cornered her near the nurses' station. Crowe unsheathed a six-inch hunting knife and attempted to murder Nikki by stabbing her repeatedly. Crowe attempted to slice Nikki's throat and successfully stabbed her eleven times, including once in her left chest (puncturing her left lung), twice in her lower left neck, once in the left kidney, twice in her left thigh, and once in her left hip joint, twisting the knife each time before removing it. Crowe also cut Nikki's hands several times as she attempted to protect herself. Believing she was dying, Nikki asked Crowe to let her die in peace. Crowe responded by flicking the knife into her abdomen and calmly walking away.

Since the assault took place in a doctors' office, which was also right next to a hospital, Nikki received immediate medical attention, and she survived the attack. Crowe was convicted in state court of assault with a deadly weapon with intent to kill inflicting serious injury, and he was sentenced to ten years in state prison. While incarcerated, Crowe mailed over 130 letters to Nikki and his daughters. Several of these letters contained threats to murder and mutilate Nikki and others Crowe thought had sexual relations with her. In 1993, Nikki obtained a final divorce from Crowe.

I

Prior to trial, Crowe made a discovery request pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), for all psychiatric and mental health reports for any witness which might reflect on the credibility or competence of the witness. It is undisputed that Nikki, who had received counselling following Crowe's attack, was the target of the request. After conducting an in camera review of the records, the district court denied the request. Crowe argues that the failure to provide him with Nikki's mental health records prior to trial on the merits deprived him of his right to cross-examine her at trial concerning her feelings of being threatened and violated Brady and Giglio . We find this argument without merit.

The Government is only required to turn over evidence that is favorable and material. United States v. Bagley , 473 U.S. 667, 674

3

(1985); Maynard v. Dixon, 943 F.2d 407, 417 (4th Cir. 1991). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of a proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Maynard, 943 F.2d at 417, citing Bagley, 473 U.S. at 682.

The burden is on Crowe to show materiality, and he fails to meet this burden. First, there is nothing in Nikki's mental health records that is favorable to Crowe. The records show that Nikki was intelligent and alert, and there was nothing in the records impeaching her perception of the events or her ability to accurately recall those events. Second, even if the records contained some favorable evidence, they were immaterial during the merits phase of the trial. The statute under which Crowe was convicted only requires that the letters were objectively threatening. See United States v. Maxton, 940 F.2d 103, 106 (4th Cir. 1991) (offense requires "that an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat."). While the victim's testimony as to her subjective feelings of being threatened might be probative, it was not required. Thus, nothing in Nikki's mental health records, even if it impacted on her testimony, was material.

II

Over defense objections, the district court allowed Nikki to testify in detail concerning the attack in December 1991. Crowe contends that a general reference to the fact that an assault took place was acceptable to put the letters in context. However, Crowe argues that allowing Nikki to go into the "gory" details of the attack was overly prejudicial.

A district court's evidentiary decisions are reviewed for abuse of discretion. United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993), cert. denied, ___ U.S. #6D6D 6D#, 62 U.S.L.W. 3640 (U.S. Mar. 28, 1994) (No. 93-7067). There is nothing in this record which warrants such a finding. Evidence of prior bad acts may be used to explain ambiguous threats. See United States v. Dutsch , 357 F.2d 331, 333 (4th Cir. 1966). Such evidence can also put the crime in context. United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991). In the pres-

4

ent case, Crowe made numerous references in his letters to the knife used in the assault and knives in general, stabbing, and the location of the assault. Most of these references are arguably ambiguous absent an understanding of the nature of the December 1991 assault. The district court conducted a proper Fed. R. Evid. 401/403 balancing test, admitted the evidence, and, on four occasions, gave an appropriate limiting instruction. As a result, we find no abuse of discretion.

III

Crowe makes the blanket assertion that the district court conspired with the Government to manipulate the Sentencing Guidelines to reach a pre-determined sentence. We find nothing in the record to support this claim.

IV

Crowe's presentence report contained a recommendation that the district court should group eleven of the counts for sentencing pursuant to USSG § 3D1.2(b).[2] The Government objected to the grouping, and the district court sustained the objection, finding that the evidence supported a finding of separate harms.

This court reviews "a question involving the legal interpretation of Guidelines terminology and the application of that terminology to a particular set of facts de novo," United States v. Wessells, 936 F.2d 165, 168 (4th Cir. 1991), but the determination as to the underlying facts is reviewed for clear error. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989).

The Second and Eleventh Circuits have recently addressed this issue in cases which are factually similar to Crowe's. See United States v. Miller, 993 F.2d 16, 21 (2d Cir. 1993) (defendant sent several threatening letters to his landlords); United States v. Bonner, 85 F.3d 522, 524-26 (11th Cir. 1996) (defendant made over twenty threatening telephone calls to the Assistant United States Attorney

---

[2] This section allows for the grouping of offenses where the counts involve substantially the same harm to the same victim and where all of the counts are connected as part of a common scheme.

5

who prosecuted him in an earlier case). The <u>Miller</u> and <u>Bonner</u> courts held that while the letters and telephone calls were arguably part of a common scheme of harassment, each one inflicted a separate psychological harm, citing USSG § 3D1.2, comment. (n.4.).**3**

We are inclined to adopt the approach used by the Second and Eleventh Circuits in resolving this issue. Nikki testified that she experienced increasing levels of fear with each letter. Moreover, as in <u>Bonner</u>, the fact that Crowe continued to send threats after his initial letter suggests that he intended to inflict new harm with each letter. Since the record supports the district court's factual finding that each of Crowe's letters caused a distinct harm, we hold that the trial judge did not err by refusing to group Crowe's offenses under USSG § 3D1.2(b).

V

Over defense objection, the district court adopted the recommendation in the presentence report and assessed a six-level increase in Crowe's base offense level for conduct evidencing an intent to carry out his threats pursuant to USSG § 2A6.1(b)(1). The district court based its decision on the underlying assault and Crowe's frequent references to the assault. Crowe argues that the increase cannot be assessed in his case because the conduct occurred prior to the offense in question. This issue was resolved against Crowe in <u>United States v. Gary</u>, 18 F.3d 1123, 1128 (4th Cir.), <u>cert. denied</u>, ___ U.S. ___, 63 U.S.L.W. 3260 (U.S. Oct. 3, 1994) (No. 93-9400) ("Any acts that evidence an intent to carry out the threats on which a conviction is predicated, whether committed prior to or following such threats, may form the basis of the § 2A6.1(b)(1) adjustment."), and we reject Crowe's plea to reverse <u>Gary</u>.

VI

The presentence report contained a recommendation that Crowe receive a two-point adjustment to his base offense level for preying on a vulnerable victim pursuant to USSG § 3A1.1. The district court

_____

**3** This Application Note states that grouping is only proper when the counts "represent essentially one composite harm to the same victim."

6

sustained the Government's objection to this adjustment, finding that Crowe preyed on Nikki because of his prior relationship with her (husband and wife) and not because she was unusually vulnerable. We agree.

For § 3A1.1 to apply, Crowe "must have initially chosen [Nikki] because of her particular vulnerability." Gary, 18 F.3d at 1128. It is undisputed that Nikki was in a weakened mental state as a result of the attack and that the letters increased her anxiety. However, the letters focus on Crowe's relationship with Nikki as husband and wife, his displeasure over her initiation of divorce proceedings, and his belief that she was being unfaithful to him. As in Gary, "[t]he evidence of [Nikki's] deteriorated condition . . . more appropriately relates to her psychological injury." Gary , 18 F.3d at 1129. Accordingly, the district court's factual finding that Crowe preyed on Nikki because of his prior relationship with her rather than because she was vulnerable was supported by the evidence and was not clearly erroneous.

VII

During sentencing, the Government made a motion for an upward departure from the Guidelines pursuant to USSG § 4A1.3,**4** and the district court granted the motion over defense objection. The district court found that the tone of Crowe's letters suggested that he would carry out his threats if given the opportunity and that this increased the likelihood that Crowe would commit future crimes. The district court also relied on Crowe's psychological evaluation, in which the doctors opined that Crowe would act on his threats upon release from prison. Crowe argues that the district court erred in making the depar-

_____

**4** This section allows for an upward departure based on the inadequacy of the defendant's criminal history category in two circumstances: (1) where the history does not adequately reflect the seriousness of the defendant's past criminal conduct; or (2) where it is likely the defendant will commit other crimes. In the present case, the district court based its decision on the latter.

7

ture and compounded that error by relying on the psychological evaluation.[5]

A trial judge's decision to depart from the Sentencing Guidelines in an atypical case is reviewed for an abuse of discretion. Koon v. United States, ___ U.S. ___, 64 U.S.L.W. 4512 (U.S. June 13, 1996) (Nos. 94-1664, 94-8842); United States v. Rybicki, 96 F.3d 754 (4th Cir. 1996). Applying the standards set forth in Rybicki, we hold that the district court's finding that Crowe is likely to commit future criminal acts is supported by the record and is an "encouraged" factor under the Sentencing Guidelines.

We further find that the district court did not violate Fed. R. Crim. P. 12.2(c) when it relied on Crowe's psychological evaluation in reaching its decision. The Advisory Committee Notes to the 1983 Amendment expressly state that the primary purpose of the rule is to protect a defendant's Fifth Amendment rights against self-incrimination. In Savino v. Murray, 82 F.3d 593, 603-04 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3157 (U.S. July 17, 1996) (No. 96-5164), this court differentiated between a defendant who initiated the psychological evaluation and one who did not, holding that the former waives any Fifth Amendment rights.

In the present case, Crowe requested the evaluation and was expressly advised prior to the evaluation of the potential disclosure and use of any information obtained. Moreover, the defense used the evaluation to argue for a downward departure. Accordingly, we find that Crowe waived his Fifth Amendment rights as to the use of the evaluation and the district court did not violate Fed. R. Crim. P. 12.2(c) by considering the evaluation in deciding to grant an upward departure.

VIII

During sentencing, the district court granted the Government's motion for upward departure based on extreme psychological injury

_____

[5] Specifically, Crowe argues that the district court violated Fed. R. Crim. P. 12.2(c), which severely limits the use of information obtained pursuant to a court-ordered psychological evaluation.

pursuant to USSG § 5K2.3, on the ground that each letter from Crowe brought new and severe suffering and increased Nikki's fears of death. This finding was supported by the evidence and was not clearly erroneous. The district court identified Nikki's frequent nightmares, fear of going to work, fear of knives, her statements that she no longer enjoyed being a nurse, her purchase of a handgun for protection, and the prognosis that Nikki's condition would likely last for the rest of her life as factors in its decision. Departure based on these factors is expressly encouraged by § 5K2.3. We further find that the magnitude of the departure (thirteen levels) was not unreasonable under the circumstances.

IX

We likewise affirm the district court's decision to grant the Government's motion for an upward departure based on extreme conduct pursuant to USSG § 5K2.8. The district court found that Crowe's letters made frequent references to Nikki's sexual activities and accused her of infidelity, accused her of allowing her boyfriends to molest their daughters, blamed her for his predicament, and graphically described ways in which Crowe would mutilate and kill Nikki, and perhaps others, including mutilation of the sex organs. In addition, evidence was presented showing that Crowe mailed two of the letters using his mother's return address to make Nikki think he had been released. These findings were well supported by the record and were not clearly erroneous. As factors supporting its decision to depart, the district court cited Crowe's intent to torture and degrade Nikki and to gratuitously inflict pain on her and to prolong her suffering, as evidenced by the especially heinous content of the letters. These factors are expressly encouraged by § 5K2.8.

X

The district court ordered Crowe to make restitution in the amount of Nikki's present and future counselling expenses. Crowe was also ordered to reimburse the Government for court-appointed attorney's fees. It is well-settled that a district court's decision to order restitution will only be reversed upon a showing of abuse of discretion. United States v. Blake, 81 F.3d 498, 505 (4th Cir. 1996); United States v. Bruchey, 810 F.2d 456, 458 (4th Cir. 1987). We find no such

9

abuse here. In deciding on the restitution amount, the district court properly considered the factors identified in <u>Bruchey</u>, and determined that while Crowe did not have the present ability to pay, he did have the future ability. Moreover, read as a whole, we find that the district court's order established a payment schedule and time limit for payment. Therefore, we find no plain error. <u>See United States v. Olano</u>, 507 U.S. 725 (1993).

We therefore affirm the findings and sentence of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

10