# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 3, 2011

No. 10-40670

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

HENRY L. SIMMONS,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, DAVIS, and GARZA, Circuit Judges.

PER CURIAM:

Henry L. Simmons appeals from his sentence after being found guilty by a jury on thirteen counts of using a cellular telephone to make bomb threats, in violation of 18 U.S.C. § 844(e). He argues that the district court erroneously refused to group all thirteen counts of the indictment into a single group for sentencing purposes pursuant to U.S.S.G. § 3D1.2. We AFFIRM.

## I. Background

From 2004 to 2009 Henry L. Simmons was involved in a relationship with Patricia Randall. After the relationship ended, Simmons began making numerous harassing telephone calls to Randall. He made over 1500 calls to

either Randall's cell phone or her grandmother's home during a two month period from August to October 1, 2009.  He also made over 800 calls to Randall's place of employment at the Corpus Christi Army Depot ("CCAD") on the Naval Air Station in Corpus Christi, Texas.  The calls became so frequent that personnel at CCAD were forced to shut down some of the phone lines, causing great disruption at the facility.

When Simmons's requests to reach Randall at CCAD were refused by the personnel who answered the phone, his calls to the facility became violent in nature.  From September 30, 2009, to October 1, 2009, he made at least thirteen bomb threats that resulted in twelve evacuations, affecting thousands of employees who were evacuated while security searched for bombs.  When Gina Vela answered the phone on the morning of September 30 in the L3 Vertex building, Simmons stated, "Bitch, there's a bomb in the building, bitch, and it's about to blow."  Seconds later, Stephanie Garcia answered the phone, and Simmons said, "Boom bitch, it's gonna blow."  Later that morning, Simmons again called CCAD and said to Garcia, "There's a bomb in the building."  On that same day, Simmons spoke to Vincent Jones, a security specialist, and stated, "There is a bomb in a satchel in the L3 trailer."

On October 1, 2009, Simmons made nine more bomb threats to different people in different buildings at CCAD.  Four of the calls were made to Jose Sanchez in Hangar 44.  Simmons separately stated to Sanchez, "This is a bomb threat," "This is a bomb threat courtesy of Patrice Randall," "A bomb will go off at 12:06," and "Mr. Sanchez, a bomb will go off in 15 minutes."  Simmons also called Velma Vela in Field Control of Building 8 and said, "There is a bomb in the building, Velma."  Simmons further threatened Joel Galvan in the T-Seminar subassembly shop of Building 8, stating "There is a bomb in the building."  He stated to Ralph Oesterich, "There is a bomb on the premises and it will detonate in 25 minutes."  John Magill, who worked in the L3 Vertex, also

received a call from Simmons and was told, "There's a bomb on the premises. You have 20 minutes until it detonates." Finally, Simmons told Orville Lankford in the CCAD security command center, "There's a bomb in your area and it's about to go off."

Ultimately, the Government charged Simmons with thirteen counts of using an instrument of interstate commerce, that is, a cellular telephone, to willfully threaten to unlawfully damage or destroy a building by means of an explosive, in violation of 18 U.S.C. § 844(e). Each of the above telephone calls was charged as a separate offense, and each count in the indictment identified the recipient of the call. The jury found Simmons guilty of all counts.

For sentencing, the presentence report applied the 2009 version of the Sentencing Guidelines and determined Simmons's total offense level to be 25, which included a five-level multiple count adjustment pursuant to U.S.S.G. § 3D1.4. This yielded an advisory guideline range of 84 to 105 months. Simmons objected that under § 3D1.2 all the counts should be grouped together and treated as a single offense for sentencing purposes. He reasoned that the threats were against CCAD as a whole rather than against separate individuals, and that Randall was the primary intended victim.

The district court overruled Simmons's objection, determining that each of the nine people who answered the calls and received the bomb threats was a victim. The court noted that Simmons could not selectively bomb Randall and that he had identified the call recipients by name. The court further believed that everyone on the base who was evacuated could be a victim, and it noted that the facility had lost 2500 man hours of operation due to the evacuation of the various buildings. The district court adopted the presentence report, but it also decided that an upward departure was warranted, in part because Simmons's violent criminal history was under-represented by the guidelines. After considering the factors of 18 U.S.C. § 3553(a), the district court sentenced

No. 10-40670

Simmons to concurrent terms of 120 months in prison, which was the statutory maximum, and three years of supervised release. It also ordered Simmons to pay restitution of $201,000 to CCAD. Simmons now appeals, challenging only the district court's refusal to group all counts when calculating his advisory guideline range.

## II.  Standard of review

We ordinarily review sentences for procedural error and for substantive reasonableness, applying an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Because Simmons's only basis for appeal is the alleged grouping error in the calculation of the guideline range, we need consider only that procedural aspect of the sentence. We review "the district court's application of the Sentencing Guidelines grouping rule *de novo*." *United States v. Lopez-Urbina*, 434 F.3d 750, 762 (5th Cir. 2005) (internal quotation marks and citation omitted). We will uphold the sentence "if it was imposed as the result of a correct application of the guidelines to factual findings which are not clearly erroneous." *Id.* (internal quotation marks and citation omitted).

## III.  Discussion

On appeal, Simmons persists in arguing that all of his counts of conviction should have been grouped together for sentencing purposes. The Sentencing Guidelines provide that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." § 3D1.2. "In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines." U.S. SENTENCING GUIDELINES MANUAL, ch.3, pt. D, introductory cmt. (2009). This may occur when, *inter alia*, "counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." § 3D1.2(b). However, the term "victim" does not include "indirect or secondary victims. Generally, there

No. 10-40670

will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim." *Id.*, cmt. n.2.

Simmons argues that the CCAD employees who answered the phone were merely indirect or secondary victims of the bomb threats and so cannot be considered separate victims for purposes of § 3D1.2. He maintains that the only intended victim here was Randall, and that the threats were made to CCAD in order to bring grief upon her. He posits that if Randall had been employed somewhere other than CCAD, the other employer would have been the vehicle by which threats were made. We are unpersuaded.

Simmons relies primarily on *United States v. Norman*, 951 F.2d 1182 (10th Cir. 1991). In that case, the defendant called an airline on two separate occasions to report falsely that a passenger who was romantically linked to his ex-wife was carrying a handgun and explosives. *Id.* at 1183. The passenger was removed from one of the flights and arrested. *Id.* The Tenth Circuit held that the two counts against the defendant for the two calls should be grouped together because they involved a common scheme to bring grief to a single victim, the falsely accused passenger. *Id.* at 1185. The court held that the different flight crews and passengers affected by the calls were merely secondary victims. *Id.* It reasoned that the defendant did not target the airline and that had the passenger chosen a different air carrier, that airline likely would have been the means by which the defendant inflicted harm upon the victim. *Id.*

*Norman* is inapposite. The defendant there was targeting a single individual by his actions (the ex-wife's boyfriend), whereas Simmons acted in a manner consistent with purposefully harming many different people. Unlike the defendant in *Norman*, Simmons directly threatened harm to the individuals who answered his calls, going so far as to refer to them by name. As a general matter, threatening communications directed at different targets will not be grouped. *See* § 2A6.1, cmt. n.3 ("[M]ultiple counts involving making threatening

5

No. 10-40670

or harassing communication to the same victim are grouped together under § 3D1.2 (Groups of Closely Related Counts) [but] [m]ultiple counts involving different victims are not to be grouped under § 3D1.2.").

In other cases involving direct threats to different people or buildings, courts have refused to group multiple counts. For example, in *United States v. Nedd*, 262 F.3d 85 (1st Cir. 2001), the First Circuit held that multiple counts covering four separate threatening telephone calls to a family's answering machine did not have to be grouped where all of the calls threatened the father, while some also threatened the wife and daughter. *Id.* at 92–93. The defendant argued that the father was the primary victim and the wife and daughter were secondary or indirect victims of his threatening behavior, but the court held that each family member was a primary victim because of the direct threats and independent traumatic effects on the three individuals. *Id.* at 92.

Similarly, in *United States v. Parker*, 551 F.3d 1167 (10th Cir. 2008), the Tenth Circuit held that the district court was not required to group two counts of falsely conveying information about a bomb threat, in violation of § 844(e), where the defendant made separate 911 calls threatening to blow up an unspecified "school," "schools," and "city hall." *Id.* at 1174 & n.4. The court reasoned that "there were multiple intended targets of the threatening 911 calls," and it specifically noted that the calls resulted in the evacuation and closing of several schools, the dispatch of police to various locations, and the search for bombs by security personnel. *Id.*

The instant case falls along a path consistent with *Nedd* and *Parker*. Simmons may have initiated the calls to CCAD because of Randall's employment there, but that does not obviate the fact that Simmons threatened several different individuals when his attempts to reach her were blocked. As in *Nedd*, Simmons directly threatened the individual call recipients, some expressly by name. This demonstrates that he meant to impart terror on those individuals,

6

No. 10-40670

and therefore those threats constituted separate harms that did not require grouping. *Cf.* § 3D1.2, cmt. n.4 (stating that "separate instances of fear and harm," such as robbery of the same individual on different occasions, are not one, composite harm and need not be grouped).

Simmons also called different buildings and threatened different locations at CCAD. Like *Parker,* Simmons's conduct resulted in the evacuation of thousands of people from multiple buildings, the disruption of the ordinary course of business at several locations, and the mobilization of security forces to respond to the threats. This shows multiple intended targets of the threatening calls. *See Parker*, 551 F.3d at 1174 & n.4; *see also United States v. Miller*, 340 F. App'x 335, 338 (7th Cir. 2009) (convictions for one count of threatening to kill a federal judge and one count of threatening to blow up the courthouse did not have to be grouped, despite contention that defendant identified only the judge as the intended victim, because threatening letter expressed desire to get revenge on "you guys" at the courthouse, thereby threatening more than one person). We perceive no error, let alone clear error, in the district court's conclusion that there were multiple victims of Simmons's offenses. The court therefore correctly applied the guidelines by refusing to group all counts of the indictment into a single group.

## IV.  Conclusion

For the foregoing reasons, the district court's judgment is AFFIRMED.

7