**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dickie Edward TOLER,**
**Defendant–Appellant.**

**No. 89–5100.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1990.

Decided April 19, 1990.

Marye Louise Wright, Charleston, W.Va., for defendant-appellant.

Dwane Lamont Tinsley, Asst. U.S. Atty. (Michael W. Carey, U.S. Atty., Charleston, W.Va., on brief), for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and RUSSELL and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

Dickie Edward Toler appeals his convictions and sentence for one count charging interstate transportation of child pornography, 18 U.S.C.A. § 2252(a)(1) (West Supp. 1989), and for two counts charging interstate transportation of a minor with the intent to engage in prohibited sexual conduct, 18 U.S.C.A. § 2423 (West Supp.1989). The district court sentenced Toler to 46 months imprisonment on each count and directed that the sentences run concurrently. Toler's primary contentions on appeal are that the district court erred, first, by permitting the introduction of evidence seized pursuant to an unconstitutional search and, second, by misapplying the multiple count rules of the sentencing guidelines which resulted in an incorrect combined offense level determination. Finding no merit to either contention, we affirm.

## I.

On January 14, 1988, Toler's 12–year–old stepdaughter reported to school, human services, and West Virginia law enforcement officials that Toler had sexually molested her. His stepdaughter also explained that Toler had taken sexually explicit photographs of her and retained the photographs, wrapped in a rag, in a gray suitcase with black trim and zippers.

Boone County, West Virginia Sheriff's Department officials obtained an arrest warrant for Toler charging him with incest. While unsuccessfully attempting to execute the arrest warrant at the home of Toler's sister, the officers were informed by an acquaintance of Toler that Toler was planning to leave the vicinity. One of the officers observed in plain view a suitcase in the cab of Toler's truck which matched the one described by Toler's stepdaughter. The officers secured the truck and requested a

search warrant from a West Virginia magistrate.

An affidavit accompanying the request contained a detailed recitation of the stepdaughter's statement explaining Toler's prohibited sexual conduct, including the fact that Toler had taken photographs of her in sexually explicit poses and that she had seen Toler place the photographs in a gray suitcase with black trim and zippers. The affidavit stated that the officers identified his truck hooked to a camper trailer and observed a suitcase inside the truck's cab which matched the description of the one believed to contain the photographs. Additionally, the affidavit stated that an individual visiting the sister's home told officers that Toler hooked the trailer to his truck approximately one hour before the officers arrived and "was getting ready to leave." The magistrate found probable cause and issued a warrant authorizing a search of Toler's truck for the photographs and for other evidence that Toler was engaged in the production of child pornography.

While executing the search warrant, the officers seized 13 pornographic photographs, 12 of which were of Toler's stepdaughter.[1] The photographs were found in the cab behind the driver's seat, not in the suitcase.

Because the offenses for which Toler was charged occurred in the course of interstate transportation, federal authorities subsequently charged him with violations of 18 U.S.C.A. § 2252(a)(1) and 18 U.S.C.A. § 2423. Specifically, Count One charged Toler with transporting child pornography from Florida to West Virginia; Count Two charged him with transporting a minor from Florida to West Virginia with the intent to engage in prohibited sexual conduct; and Count Three charged him with transporting a minor from West Virginia to Ohio with the intent to engage in prohibited sexual conduct. Although the state charges of incest were ultimately dismissed, Toler was convicted by a jury of the federal violations.

1. The subject of the thirteenth picture is un- related to this appeal.

At a pretrial hearing, Toler moved to suppress the introduction of the photographs on the ground that they were the fruit of an unconstitutional search. The district court denied the motion and the photographs were introduced as government exhibits at Toler's trial.

## II.

▮ Toler contends that the district court should have excluded the photographs because the search warrant was not supported by probable cause. He reasons that because the officers were informed that the photographs were located in his suitcase, there was probable cause to support a search of the suitcase but not probable cause to search the entire vehicle. Toler asserts that because the warrant was issued improvidently, the search violated his rights under the fourth amendment. Therefore, he argues that the evidence seized pursuant to the warrant was tainted as the fruit of an unconstitutional search and should have been excluded at trial under *Elkins v. United States*, 364 U.S. 206, 223, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960).

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court provided guidance for the proper issuance of search warrants:

> An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause.... Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

*Id.* at 239, 103 S.Ct. at 2332. The Court stated that a magistrate's task in issuing a warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332.

Based on the totality of the circumstances, the magistrate correctly found that probable cause existed to search Toler's truck. The warrant was not issued based on mere conclusory allegations but was grounded on reliable factual information. Although Toler was not ultimately charged with the production of child pornography, the warrant authorized the officers to search for evidence that Toler was engaged in the "Filming of Sexually Explicit Conduct of Minors" which included authorization to search for the photographs believed to be in the suitcase. The fact that Toler had placed in his truck a suitcase matching the description of the one believed to contain child pornography, coupled with both his stepdaughter's statement and the statement from an acquaintance that Toler was preparing to leave the area, provided the magistrate with a sufficient basis to believe that additional photographs, a camera, or other evidence associated with the production of child pornography might have been found elsewhere in the truck.[2]

## III.

▮ Because the offenses were committed after November 1, 1987, Toler's sentence is governed by the Sentencing Reform Act of 1984, 18 U.S.C.A. §§ 3551, *et seq.* (West 1985 & Supp.1989), and the sentencing guidelines promulgated by the United States Sentencing Commission. United States Sentencing Commission, *Guidelines Manual* (Nov.1987, as amended).

The base offense level for a violation of 18 U.S.C.A. § 2252(a)(1) (Count One—interstate transportation of child pornography) is 13. U.S.S.G. § 2G2.2. For a violation of 18 U.S.C.A. § 2423 (Counts Two and Three—interstate transportation of a minor

---

**2.** The government argues in the alternative that the good faith exception to the exclusionary rule created in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applies. We need not address this issue because it is clear that the search was conducted pursuant to a facially valid warrant.

with the intent to engage in prohibited sexual conduct), the base offense level is 16. U.S.S.G. § 2G1.2. Because at least two of the photographs underlying the section 2252 offense depicted a minor under the age of 12 and Toler's section 2423 offenses involved a 12–year–old minor, the district court correctly increased the base offense level for each count by two levels. *See* U.S.S.G. § 2G2.2(b)(1); U.S.S.G. § 2G1.2(b)(3). Thus, the court determined that the offense level for the child pornography offense was 15 and the offense level for each of the section 2423 offenses was 18. The district court determined that because the counts were not closely related under U.S.S.G. § 3D1.2, they comprised three separate groups for sentencing purposes. Therefore, pursuant to U.S.S.G. § 3D1.4, the court added 3 levels to the group with the highest offense level (18) and reached a combined offense level of 21. Offense level 21 and criminal history category I produce a sentencing guidelines range of 37 to 46 months. The district court sentenced Toler to 46 months imprisonment.

Toler contends that the district court incorrectly applied the guidelines for grouping multiple counts. Specifically, he argues that under U.S.S.G. § 3D1.2(a) the district court should have included the interstate transportation of child pornography (Count One) in the same group as the section 2423 offense charged in Count Two because both occurred on the same trip to West Virginia and both involved the same victim.[3] Since this issue involves a legal interpretation of guidelines terminology and the application of that terminology to a particular set of facts, we review de novo. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989).

A brief explanation of the policy considerations underlying the guidelines grouping rules is helpful in the resolution of this issue. As stated in the commentary introducing the multiple count guidelines, these guidelines are a means for balancing two competing objectives in cases in which a defendant is convicted of more than one count. One objective is to ensure "incre-

mental punishment for significant additional criminal conduct." U.S.S.G. Ch. 3, Pt. D, intro. comment. The competing objective is "to limit the significance of the formal charging decision ... to prevent multiple punishment for substantially identical offense conduct." *Id.* Thus, under the guidelines, "[c]onvictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines. In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines." *Id.*

The offenses involved here are not fungible item offenses (*e.g.*, money, drugs, property) that would be grouped under U.S.S.G. § 3D1.2(d); nor does this case present a situation in which one of the counts embodies conduct that is the basis for a sentence enhancement as a specific offense characteristic or general adjustment in another count, a situation that would call for grouping under U.S.S.G. § 3D1.2(c). Thus, our inquiry narrows to whether the offenses should be grouped under either subsection (a) or (b) of U.S.S.G. § 3D1.2. These two grouping rules require a determination of whether the two offenses are sufficiently interrelated that, in essence, they are but alternative means of punishing "substantially the same harm." U.S.S.G. § 3D1.2. If the offenses are closely interrelated, they will be grouped under subsection (a) or (b) and treated as if they were one offense for purposes of sentencing. On the other hand, if the offenses identify distinctly different instances of criminal behavior involving different harms, they are not to be grouped under either of these two rules.

The key to determining whether two offenses are sufficiently interrelated and involve substantially the same harm is whether the two offenses involve the same victim within the meaning of section 3D1.2. The term "victim" as used in section 3D1.2 is described in Application Note 2 as follows:

> The term "victim" is not intended to include indirect or secondary victims. Gen-

---

**3.** Grouping the first count with the second would lower the combined offense level under

U.S.S.G. § 3D1.4 to 20 and thus reduce the sentencing range to 33 to 41 months.

erally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, *i.e.* to identify and group "counts involving substantially the same harm." Thus, for so-called "victimless" crimes (crimes in which society at large is the victim), the grouping decision must be based primarily upon the nature of the interest invaded by each offense.

U.S.S.G. § 3D1.2, comment. (n.2).

Because both Counts One and Two occurred on the interstate trip from Florida to West Virginia, Toler argues that under U.S.S.G. § 3D1.2 his stepdaughter was the victim of both offenses since she was depicted in the photographs in the section 2252(a)(1) violation (Count One), as well as the minor transported in the first section 2423 violation (Count Two).[4] Thus, Toler reasons that because the victim was the same in both counts, they must have involved the same harm under U.S.S.G. § 3D1.2(a).

We conclude that the district court was correct in not grouping the section 2423 offense in Count Two with the section 2252(a)(1) offense in Count One because the two offenses involve different primary victims within the meaning of § 3D1.2. Section 2423 of Title 18, denominated "Transportation of minors," makes unlawful the knowing transportation across state lines of an individual under age 18 with the intent that the individual engage in prohibited sexual conduct. It is clear on the face of section 2423 that the primary interest sought to be protected is that of the individual minor. Thus, the principal victim of this offense is Toler's minor stepdaughter.

In contrast, section 2252(a)(1) makes unlawful the knowing interstate transportation of "any visual depiction ... of a minor engaging in sexually explicit conduct." An examination of this statute and its legislative history demonstrates that its primary focus (*i.e.,* "the nature of the interest invaded," U.S.S.G. § 3D1.2, comment. (n.2)) is the harm to the moral fabric of society at large.[5]

While we agree with Toler that his stepdaughter was a victim of both offenses, we do not agree that both offenses have the same primary victim within the meaning of § 3D1.2. The primary victim of the section 2423 offense is the minor, while the primary victim under section 2252(a) is society in general, with the minor a secondary victim. As stated in Application Note 2, the grouping determination looks only to the primary victim of the offenses.

For these reasons we conclude that the district court correctly determined that these two offenses should not be grouped under section 3D1.2(a).[6]

## IV.

We have considered the remaining issues raised and find them meritless. Therefore, we affirm Toler's convictions and sentence.

AFFIRMED.

---

4. Toler does not argue that Count Three should be grouped with Counts One and Two. Count Three involved Toler's trip from West Virginia to Ohio. Because two different interstate trips occurred, Count Three cannot involve "the same act or transaction" as Counts One and Two. U.S.S.G. § 3D1.2(a).

5. A Senate Report discussing the child pornography law expresses the fear that unless the dissemination of child pornography is checked, it could contribute to a continuing cycle of child abuse. Senate investigations reveal that by using child pornography as the facilitator, pedophiles are able to establish contact with other pedophiles and even child models. The report states that often individuals who were abused as children become abusers as adults. S.Rep. No. 438, 95th Cong., 2d Sess. 5–9, *reprinted in* 1978 U.S.Code Cong. & Admin.News 43–46. The legislative history states: "[T]he use of children as prostitutes or as the subjects of pornographic materials is very harmful to both the children and the society as a whole." *Id.* at 5, 1978 U.S.Code Cong. & Admin.News 43.

6. Nor would grouping be appropriate under section 3D1.2(b), which like subsection (a), requires a common victim but permits grouping in certain circumstances involving two or more connected acts or transactions.