**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kevin Lee WILSON,**
**Defendant–Appellant.**

No. 90–5359.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 5, 1990.

Decided Dec. 10, 1990.

W. Hickman Ewing, Jr., U.S. Atty., Dan Newsom, Asst. U.S. Atty. (argued), Office of U.S. Atty., Memphis, Tenn., for plaintiff-appellee.

Kemper B. Durand (argued), Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard, Memphis, Tenn., for defendant-appellant.

Before KRUPANSKY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

The defendant, Kevin Lee Wilson, plead guilty to six counts of using an interstate commerce facility in an attempt to have his wife killed in violation of 18 U.S.C. § 1958.[1] On February 5, 1990, Wilson was sentenced to 72 months in prison. Wilson appeals his sentence on several grounds under the United States Sentencing Guidelines (U.S.S.G.).

In April of 1985 Wilson contacted his former fiancee, Melba Rogers, who lived in Florida. She came to Memphis and went out to dinner with Wilson. Wilson's wife was working at the time of the dinner and did not know her husband was meeting with Rogers. At the dinner, Wilson stated to Rogers that he wanted his wife killed, and he asked Rogers to find a "hit man" to commit the murder. When Rogers returned to Florida, Wilson continued to contact her concerning the scheme. Rogers went to law enforcement authorities in Tallahassee and agreed to cooperate. The FBI thereafter recorded five telephone conversations between Rogers in Florida and Wilson in Memphis discussing the scheme. Additionally, Wilson mailed a letter to Rogers containing a $500 down payment to pay

---

**1.** Section 1958, the Federal Murder–For–Hire statute, provides:

Whoever travels in or causes another ... to travel in interstate or foreign commerce, or uses or causes another ... to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State ... as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, shall be ... imprisoned not more than ten years....

the hit man. These six acts were the bases for the six count indictment. The taped telephone conversations indicated certain facts about Wilson's plan. He wanted Rogers to find a third party to enter his house and kill his wife. Wilson was planning on attending church with their daughter while the murder was committed. The hit man was to make it look like a burglary by taking several items. Two days before the murder was to occur, the FBI arrested Wilson.

From the taped conversations between Wilson and Rogers, it appears that Wilson had several objectives he intended to accomplish by causing his wife's death. First, Wilson wanted sole custody of their two year old daughter. Second, Wilson wanted to collect on a $220,000 life insurance policy that covered his wife. Lastly, Wilson wanted to re-establish a relationship with Rogers.

Prior to the entry of a guilty plea, the probation officer prepared a presentence report. After the defense and prosecution had responded to the report, the probation officer prepared an addendum that contained recommendations and responded to objections from both parties. At the sentencing hearing, the district court adopted the presentence report as its grounds for decision, and sentenced Wilson to 72 months in prison.

On appeal, Wilson has raised three issues. First, Wilson contends that the district court used the wrong offense guideline for sentencing purposes. Second, according to Wilson, grouping of the six counts for the purpose of sentence calculation is required by U.S.S.G. §§ 3D1.2(a) or 3D1.2(b). Wilson's final argument is that the district court failed to make the requisite findings concerning disputed facts during the sentencing process.

## I.

█ Wilson maintains that the district court applied the wrong offense guideline for sentencing. The court applied U.S.S.G. § 2E1.4 with a base level of 23. Wilson contends U.S.S.G. § 2A2.1, with a base level of 20, should have been the section used.

While both section 2E1.4 and section 2A2.1 reach the conduct in question, for the reasons that follow, we hold that the district court was correct in applying section 2E1.4. Section 2E1.4 states:

*Use of Interstate Commerce Facilities in the Commission of Murder–For–Hire.*

(a) Base Offense Level (Apply the Greater)

    (1) 23, or

    (2) the offense level applicable to the underlying unlawful conduct.

Section 2E1.4 is in part E of the guidelines. Part E is entitled "Offenses Involving Criminal Enterprises and Racketeering." Wilson maintains that part E was meant to apply only to organized crime. The *Introductory Commentary* to part E states, however, that "[b]ecause of the jurisdictional nature of the offenses included, this subpart covers a wide variety of criminal conduct." Wilson's conduct involved using a facility of interstate commerce in an attempt to have his wife killed. Accordingly, section 2E1.4 covers Wilson's conduct.

Section 2A2.1 states:

*Assault with Intent to Commit Murder: Conspiracy or Solicitation to Commit Murder: Attempted Murder.*

    (a) Base Level 20

Since Wilson's conduct involved a solicitation to commit murder, section 2A2.1 also covers the acts in question. Moreover, an examination of the Statutory Index (Appendix A) provides further support for the proposition that both section 2A2.1 and section 2E1.4 reach Wilson's conduct. The Statutory Index matches each statutory offense to the applicable offense guideline or guidelines. The Statutory Index indicates two different offense guidelines for convictions under the Federal Murder–For–Hire statute: section 2A2.1 and section 2E1.4. Accordingly, the district court was faced with a choice between two offense guidelines, both of which appear appropriate.

U.S.S.G. § 1B1.2 contains general directions for applying the guidelines. The first Application Note to section 1B1.2

states that "[w]hen a particular statute proscribes a variety of conduct that might constitute the subject of different offense guidelines, the court will determine which guideline section applies based upon the nature of the offense conduct charged in the count of which the defendant was convicted." Since Wilson's conduct involved both a "solicitation to commit murder" and "use of interstate commerce facilities in commission of a murder-for-hire," this instruction is not helpful.

Subsection 2E1.4(a), however, provides guidance applicable to this situation. The subsection states:

- (a) Base Offense Level (Apply the Greater):
  - (1) 23; or
  - (2) the offense level applicable to the underlying unlawful conduct.

In this particular case, section 2A1.2 is "the offense level applicable to the underlying unlawful conduct." Under the facts of this case, section 2A1.2 results in a base offense level of 20. Since 23 is greater than 20, section 2E1.4 mandates that the base offense level be 23.[2] In this particular case, section 2E1.4 has a higher base offense level. On the other hand, section 2A2.1 may lead to a higher offense level in certain circumstances. Section 2A2.1(b) provides for increases in the offense level when certain "specific offense characteristics" exist. For example, if a gun was fired, the offense level is increased by five levels. If the victim suffers a permanent bodily injury, the offense level is increased by six.[3] Section 2E1.4 sets a minimum base offense level for violations of the Federal Murder–For–Hire statute. That minimum base offense level applies to this case.

## II.

Wilson plead guilty to six counts of use of interstate facilities with the intent that his wife be killed. Five of the counts in-volved recorded discussions over the telephone between Wilson and Melba Rogers arranging the killing. The sixth count involved a letter mailed by Wilson to Rogers containing money for the hit man. The district court refused to group these offenses.[4] Wilson claims that the six counts should have been grouped under U.S.S.G. § 3D1.2. Section 3D1.2 states that:

*Groups of Closely–Related Counts*

All counts involving substantially the same harm shall be grouped together in a single group.... Counts involve substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan,....

(d) Counts are grouped together if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved or some other measure of aggregate harm,....

Specifically excluded from operation of this subsection are:

... 2E1.4 ...

Exclusion from grouping under [subsection (d)] does not necessarily preclude grouping under another subsection.

■ The government maintains that subsection (d) suggests that no grouping should occur under subsection (a) or (b) because section 2E1.4 is specifically excluded by subsection (d) from grouping under subsection (d). The government is clearly wrong. The exclusion under subsection (d) has no effect on subsection (a) or (b). Subsection (d) is meant to apply to "fungible item offenses" like money, drugs or property. Moreover, exclusion under subsection

---

**2.** Application Note 2 to section 2E1.4 states that "[i]f the offense level for the underlying conduct is less than the alternative minimum base level specified (*i.e.,* 23), the alternative minimum base level is to be used."

**3.** For example, in *United States v. Carpenter,* 914 F.2d 1131, 1135 (9th Cir.1990), section 2A2.1 was applied because it lead to a base offense level of 29.

**4.** Grouping means to combine several charges into one unit before assigning point values.

(d) does "not necessarily preclude grouping under another subsection." The guidelines attempt to prevent "the possibility that an arbitrary casting of a single transaction into several counts will produce a longer sentence." *The Guidelines Resolution of Major Issues* (Guideline Manual p. 1.9). Subsections (a), (b), and (d) are different means of achieving this goal.

■■■ The application of section 3D1.2 to a particular set of undisputed facts is a question of law that is reviewed de novo. *United States v. Toler*, 901 F.2d 399, 402 (4th Cir.1990). *See also United States v. Manuel*, 912 F.2d 204 (8th Cir.1990). Section 3D1.2(a) does not apply to Wilson's case because the five telephone calls and the mailing of a letter are not a single "act or transaction." Because the actions occurred over a two week period, they can not be characterized as a single act. *See United States v. Moore*, 877 F.2d 651 (8th Cir.1989). Grouping is required, however, under subsection 3D1.2(b). The telephone calls and letter involve "two or more acts or transactions connected by a common criminal objective...."[5]

Grouping is required when the separate acts create a single "harm." The Third Circuit has stated that "[t]he key to determining whether two offenses are sufficiently interrelated and involve substantially the same harm is whether the two offenses involve the same victim within the meaning of section 3D1.2." *United States v. Toler*, 901 F.2d 399, 402 (1990). Moreover, Application Note 2 to section 3D1.2 states "[t]he term victim is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim." Wilson's wife is the victim of all six acts and the six acts involve the same objective: her death. The company insuring the life of Wilson's wife, for example, might have suffered harm if the murder had occurred, but it is only a secondary victim.

An important objective of section 3D1.2 is to limit the significance of the prosecutor's charging decision to prevent multiple punishment where there is one victim and two or more acts in furtherance of a common criminal objective. Wilson's crimes should be grouped.

### III.

Defendant also claims that the district court failed to make the required findings of fact on disputed issues involved in sentencing. A general review of the sentencing process used in this case is helpful in understanding this issue. A presentence report was prepared by a United States Probation Officer and submitted to all parties for review. Wilson filed objections to the presentence report and the probation officer responded to Wilson's objections in the addendum to the report. At Wilson's request, a bifurcated sentencing hearing was held. The first hearing, on December 13, 1989, was held to resolve the disputed guidelines issues. On February 5, 1990, at a separate hearing, Wilson was sentenced to serve 72 months in prison.

U.S.S.G. § 6A1.3 of the sentencing guidelines provides that the district court shall "resolve disputed sentencing factors...." Federal Rule of Criminal Procedure 32 provides that if any factual inaccuracies are alleged by a defendant, the court must make a finding as to that matter or make a determination that no finding is necessary because the facts in dispute will not be used in sentencing. If the sentencing judge fails to make the requisite findings and determinations or the findings are ambiguous, the case must be remanded for resentencing. *United States v. Hurtado*, 846 F.2d 995, 998 (5th Cir.1988).

---

**5.** Application Note 4 to section 3D1.2 provides examples of situations covered by section 3D1.2. One example involves a party "convicted of two counts of mail fraud and one count of wire fraud, each in furtherance of a single fraudulent scheme." According to the application note, the "counts are to be grouped together even if the mailings and telephone call all occurred on different days." The defendant's use of the mail and the telephone was in furtherance of a single scheme, and should be grouped even though the acts of interstate communications occurred on different days.

At the sentencing hearing held on December 13, 1989, Wilson raised two objections to the presentence report that should be addressed as "disputed sentencing factors."[6] First, Wilson contends that application of section 2E1.4 was not sufficiently justified in the record. Second, Wilson maintains that the court's rejection of the claimed diminished capacity was not sufficiently justified.

■ At the sentencing hearing on December 13, 1989, the district court stated, "I really do not know what the court can add to the presentence report because it is an excellent report. The court agrees with it entirely and finds that this presentence report accurately reflects what the court thinks the law is...." Because the district court adopted the presentence report as its finding of fact and law, the presentence report must be examined to determine if sufficient findings are made on the record to support the sentence.

In the addendum to the presentence report the probation officer responds to Wilson's allegation that section 2A2.1 is the correct guideline. The probation officer conceded that either section 2E1.4 or section 2A2.1 might be applicable, but supported her decision to apply section 2E1.4 by stating that Wilson plead guilty to committing acts covered more closely by section 2E1.4. This court has determined that application of section 2E1.4 was correct. Sufficient factual findings exist in the report to support this determination.

■ Wilson also contends that the report did not sufficiently explain why a downward departure was not in order. More specifically, Wilson contends that diminished capacity at the time of the offense justifies a decrease in offense level. For diminished capacity to justify a decrease, the offense must be nonviolent in nature. *See* U.S.S.G. § 5K2.13. The probation officer correctly concluded that use of interstate facilities for a murder-for-hire does not constitute a non-violent offense. *See United States v. Maddalena*, 893 F.2d 815 (6th Cir.1989). Diminished capacity, therefore, is not a factor that is available to Wilson.

IV.

Sufficient findings were made in the presentence report to sustain the sentence. The district court's application of section 2E1.4 is correct. The case is REVERSED and REMANDED, however, for resentencing in a manner consistent with this opinion.

---

**6.** At the December 13, 1989 sentencing hearing, Wilson also raised the issue of his acceptance of responsibility and whether the six counts Wilson plead guilty to should be grouped. The district court held that Wilson had accepted responsibility, and this court holds that the six counts should be grouped. Since Wilson has prevailed on these issues, these "disputed sentencing factors" need not be further examined.