107 F.3d 872
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terry KIRKLAND, Defendant-Appellant.
 No. 96-5192.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1997.
 
 Before: SILER, COLE, Circuit Judges; and VAN GRAAFEILAND, Circuit Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant Terry Kirkland ("Kirkland") appeals his sentence of thirty-four months' incarceration followed by a three-year term of supervised release imposed after his guilty plea to receipt, transportation, reproduction, possession and distribution of sexually explicit materials involving the use or depiction of minors. For the reasons that follow, we affirm the district court.
 
 I.
 
 2
 In 1994, the United States Postal Inspection Service ("USPIS") began an investigation of The Letter, a newsletter that catered to "gay" interests. Kirkland was identified as its publisher and distributor. Kirkland sold The Letter to subscribers for $5.00 per copy, the amount necessary to cover the costs of paper and postage. The Letter was advertised in a national magazine as a contact publication. Persons who responded to the advertisement in writing formed the basis of Kirkland's subscription list. Kirkland used that list in coordinating the trading of certain videotapes between subscribers.
 
 
 3
 USPIS agents, using the alias of "Rick Maddox," initiated correspondence with Kirkland. On July 23, 1994, Kirkland sent a letter to USPIS asking if "Maddox" was interested in trading pornographic materials of young boys. On August 17, 1994, USPIS responded affirmatively. In its written response, USPIS asked specifically about materials that involved minors. Later, on September 9, 1994, USPIS mailed another letter to Kirkland, describing 17 videotapes that "Rick Maddox" had available for trading. On September 19, 1994, Kirkland wrote to USPIS describing how he (1) facilitated trades for individuals interested in child pornography, and (2) was interested in ordering two of the seventeen tapes. The tapes that Kirkland ordered from the USPIS list were cataloged as containing young boys in various sexually explicit acts.
 
 
 4
 Kirkland and USPIS continued to correspond over the next four months. On January 12, 1995, Kirkland mailed USPIS a videotape called "Shower Boy." On February 22, 1995, in a controlled delivery, USPIS mailed Kirkland two tapes of child pornography. After Kirkland retrieved the tapes, USPIS followed Kirkland from the post office to his home, where they executed a search warrant. Pursuant to the search, USPIS found thirteen videotapes that contained child pornography.[1] While USPIS agents were executing the search warrant, Kirkland showed postal inspectors a computer listing of the videotape trading transactions and the subscribers to The Letter who had expressed an interest in the child pornography videotapes.[2]
 
 
 5
 Kirkland was arrested on May 1, 1995 and indicted on April 26, 1995, for distributing child pornography in a twelve-count indictment. Counts 1 through 4, 9 and 10 allege receipt of sexually explicit visual depictions through the United States mails involving the use of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). Counts 5 through 8 allege transporting and shipping in interstate commerce by means of the United States mails visual depictions involving the use of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1). Count 11 alleges the reproduction of visual depictions of materials involving the use of a minor engaging in sexually explicit conduct for distribution in interstate commerce in violation of 18 U.S.C. § 2252(a)(2). Count 12 alleges unlawful possession of three or more videotapes containing visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). Kirkland pleaded guilty to all twelve counts and was sentenced on January 26, 1996. He now appeals his sentence to this court.
 
 II.
 
 6
 We review de novo the district court's interpretation and legal conclusions regarding application of the United States Sentencing Guidelines. United States v. Bazel, 80 F.3d 1140, 1141 (6th Cir.), cert. denied, 117 S.Ct. 210 (1996); United States v. Scott, 74 F.3d 107, 111 (6th Cir.1996). The district court's refusal to apply a particular guideline and the district court's factual findings are reviewed for clear error. United States v. Adu, 82 F.3d 119 (6th Cir.1996); United States v. Scott, 74 F.3d 107, 111 (6th Cir.1996).
 
 III.
 
 7
 The district court considered each count to which Kirkland pleaded guilty as separate counts for sentencing purposes. On appeal, Kirkland argues that the counts were so similar that they should be grouped for purposes of sentencing, which would result in a lesser sentence. The government, on the other hand, maintains that although the counts were similar, each count dealt with a different victim and thus should be considered separately.
 
 
 8
 Section 3D1.2 of the United States Sentencing Guidelines provides that the offenses of multiple count indictments may be grouped for sentencing purposes in order to prevent multiple punishment for substantially similar conduct. U.S.S.G. Ch. 3, Pt.D intro. comment. The Sentencing Guidelines clearly state that "convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not accounted for by the guidelines. In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines." Id. In order to determine whether the counts should be grouped together, a court should determine whether the counts involved substantially the same harm. To determine the same harm, a court must examine whether the counts involve the same victim and the same act or transaction.[3] U.S.S.G. § 3D1.2.
 
 
 9
 In the case before this court, Kirkland knowingly distributed and received sexually explicit material involving minor children at least eleven times from the date starting on or about October 27, 1994 until February 22, 1995. On each occasion of distribution and receipt, the sexually explicit material contained depictions of different children. Kirkland argues that the district court should have grouped all twelve of these counts under U.S.S.G. § 3D1.2 because his action of distribution had the same harm in each case and the victim that was harmed by his actions was the same in each case; to wit, society in general. See United States v. Toler, 901 F.2d 399 (4th Cir.1990). Kirkland's reliance on Toler is misguided and inappropriate.
 
 
 10
 In Toler, the Fourth Circuit confronted the issue of whether to group counts alleging illegal behavior in violation of 18 U.S.C. § 2252(a)(1) (shipping child pornography in interstate commerce) with counts alleging illegal behavior under 18 U.S.C. § 2423 (for transporting juveniles in interstate commerce for prostitution or sexual activity). The Fourth Circuit refused to group the offenses reasoning that the victim under § 2423 was the child, while the primary victim under § 2252(a)(1) "is the harm to the moral fabric of society at large." Toler, 901 F.2d at 403. The Toler court reasoned that the primary victim under § 2252 was society at large because the Sentencing Guidelines are specific about warranting extra punishment for those persons who are involved in the sexual exploitation of a minor under § 2423. As support, the Toler court offers a conclusory statement that the "legislative history demonstrates that its [§ 2252] primary focus (i.e., 'the nature of the interest invaded,' U.S.S.G. § 3D1.2, comment. 2) is the harm to the moral fabric of society at large." Toler, 901 F.2d at 403.
 
 
 11
 Kirkland has been convicted solely under § 2252 and his argument that the victim under § 2252 is society as concluded by the Toler court is unpersuasive. The focus of § 2252 is clearly the abused and exploited child. In addition, because the Toler opinion addresses the application of Sentencing Guidelines under two statutory provisions and Kirkland is convicted under only one, the Toler opinion can be distinguished from this case.
 
 
 12
 Most of the circuits that have addressed this specific issue disagree with the reasoning of the Fourth Circuit and instead follow the reasoning of the Eighth Circuit in United States v. Rugh, 968 F.2d 750 (8th Cir.1992). See United States v. Ketcham, 80 F.3d 789, 793 (3d Cir.1996) (holding that the primary victim in violations of 18 U.S.C. § 2252 is the child used in the pornography, and where there are different children, there should be no grouping of the counts); United States v. Gallardo, 915 F.2d 149 (5th Cir.1990) (defendant's act of mailing four separate letters containing child pornography constitutes four separate violations of 18 U.S.C. § 2252(a)(1) and defendant is properly sentenced on all four counts), cert. denied, 498 U.S. 1038 (1991); United States v. Rugh, 968 F.2d 750, 756 (8th Cir.1992) (the primary victim of 18 U.S.C. § 2252(a)(2) is the exploited child and when there are different exploited children there are different crimes); and United States v. Cipollone, 951 F.2d 1057, 1058 (9th Cir.1991) (when a defendant receives pictures on different occasions, a finding of separate crimes is required because it is the act of shipping or receiving the pornography that is the focus of 18 U.S.C. § 2252(a)(2)). Indeed, the Sixth Circuit, while addressing numerous similar cases concerning child pornography and sentencing, has not directly addressed the issue of grouping multiple counts dealing with sexually explicit material involving minors.
 
 
 13
 In Rugh, the defendant appealed his conviction for receiving child pornography through the mail. On appeal, he argued that the district court should have grouped the two child pornography counts for which he was convicted under U.S.S.G. § 3D1.2 because the same victim was involved in both counts. Defendant Rugh asserted the same arguments, citing to the Fourth Circuit in Toler. The Eighth Circuit reviewed the legislative history and was led to a contrary conclusion. The Eighth Circuit's reading of the Senate report determined that although there were grave concerns about the effect of child pornography on the fabric of society, the committee concluded that "the use of children as prostitutes or as the subjects of pornographic material is very harmful to both children and the society as a whole." Rugh, 968 F.2d at 755. See also S.Rep. No. 95-438, 95th Cong., 2d Sess. 9, reprinted in 1978 U.S.C.C.A.N. 40, 43, 46.
 
 
 14
 The Eighth Circuit further determined that simply because the sexual exploitation of children in child pornography had a secondary effect on society did not in any way mitigate the fact that the primary victim in child pornography is the child.[4] Id. By exploring the extensive legislative history, the Eighth Circuit is, indeed, correct in determining that the main purpose of the Act was to protect children from sexual exploitation. Because protecting children was the main purpose of the Act, logic would follow that the primary victim would also be the exploited children and not society. We therefore conclude that the primary victim under § 2252 is the exploited child. Furthermore, were this circuit to follow the reasoning of the Fourth Circuit and establish that 18 U.S.C. § 2252 only seeks to protect society against the evils of child pornography, then any criminal statute that sought to protect society in a general sense would make society the primary victim. "Were this the case, society would be the primary victim of nearly every criminal statute." Ketchum, 80 F.3d at 793. Accordingly, because it is each of those children who are the victims of Kirkland's offenses, we find that grouping under U.S.S.G. § 3D1.2(b) is inappropriate. Id.
 
 IV.
 
 15
 Kirkland's second objection to his sentence is that his base offense level was inappropriately increased by five levels pursuant to U.S.S.G. § 2G2.2(b)(2) because the district court improperly determined that his reproduction of the sexually explicit material, allegedly for his own use or for later distribution, was equal to distribution for pecuniary gain. The government maintains that Kirkland's actions, which formed the basis of his convictions, fulfill the pecuniary gain section in the Sentencing Guidelines in at least two different respects. First, the government asserts that because each of the tapes that Kirkland was collecting had a street value between $200 to $250, he enjoyed a pecuniary gain simply by having those tapes in his possession. Second, the government asserts that Kirkland enjoyed a pecuniary gain, even though there was no charge for facilitating the trades, because his initial contact with each of his trading customers before facilitating the trades was from his publication, The Letter, for which he charged each subscriber five dollars.
 
 
 16
 U.S.S.G. § 2G2.2(b)(2) states that if the offense outlined in § 2G2.2 involved distribution that the sentence will be increased by no less than five levels. The Application Notes to U.S.S.G. § 2G2.2(b)(2) provide that " 'distribution,' as used in this guideline, includes any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute." With that definition clearly established, it becomes obvious that Kirkland's arguments are without merit.
 
 
 17
 Kirkland has admitted that he duplicated tapes prior to sending them out and that he did so for the purpose of distributing them at a later date. Under de novo review, we find that Kirkland's actions of duplicating the tapes is an act of production as described by the Sentencing Guidelines. We also find that Kirkland's possession of these tapes was for the sole purpose of distributing them to his customers. Kirkland admitted that he did not need to have an order placed for a particular title when he duplicated a tape. He merely copied the tapes so that he could have them for distribution at a later date. Before each tape was mailed to a customer, but after it had been duplicated, Kirkland assumed a pecuniary gain as each copied tape had a street value of approximately $200. Furthermore, Kirkland incurred pecuniary gain each time a subscriber of The Letter later traded the illicit tapes, ensuring that the particular trader would continue to subscribe to The Letter. Kirkland's actions clearly fit within the parameters of § 2G2.2(b)(2); thus, the district court was proper in increasing Kirkland's base offense level by five levels.
 
 V.
 
 18
 For the foregoing reasons, we affirm the district court's order sentencing defendant to thirty-four months' incarceration and three years' supervised release.
 
 
 
 *
 The Honorable Ellsworth A. Van Graafeiland, United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 The government contends that fourteen videotapes were found during the search. Although Kirkland admits that thirteen tapes were found at the time that the search warrant was executed, he asserts that he was in the process of duplicating one of the tapes to make a fourteenth tape. Kirkland told inspectors that he was only copying the tape at the request of one of the traders
 
 
 [2]
 Although Kirkland denies any belief that the tapes had commercial value and that he was involved in the business of trading for money, the computer printout listed one of the tapes as having a street value of $200. Postal Inspector David Dirmeyer testified that child pornography tapes usually have a value of between $200 to $250 for an original tape and $200 for a copy
 
 
 [3]
 The term victim under § 3D1.2 "is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the 'victim' for the purposes of subsection ... (b) is the societal interest that is harmed.... Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, i.e., to identify and group 'counts involving substantially the same harm.' " U.S.S.G. § 3D1.2, comment. 2. Only if there is no identifiable victim will a court deem the primary victim to be society. United States v. Ketcham, 80 F.3d 789 (3d Cir.1996)
 
 
 [4]
 Of deep concern to the [Senate Judiciary] Committee is the effect of child pornography on the children who become involved. Generally they are highly vulnerable children in the first place, making them easy prey
 Frequently they are victims of child abuse, or of broken homes, or of parents who just don't care. Such children have no self-pride or confidence and very little resistance. An offer of money, food, or shelter, or even a few friendly words or a show of concern can lead them unquestioning, into the hands of exploiters for the purposes of pornography or prostitution. Where there was no love or encouragement in their lives before, they finally achieve approval, encouragement and money for sexual favors.
 Such encounters cannot help but have a deep psychological, humiliating impact on these youngsters and jeopardize the possibility of healthy, affectionate relationships in the future. Indeed such children often grow up in an adult life of drugs and prostitution. Even more tragic, however, is the fact that many adults who were molested as children tend to become child molesters themselves, thus continuing the vicious cycle. S.Rep. No. 95-438, 95th Cong., 2d Sess. 9, reprinted in 1978 U.S.C.C.A.N. 40, 46.