**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4022

RICHARD WARREN CARROLL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4259

CHARLES D. GRANATA,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CR-95-269)

Argued: January 27, 1998

Decided: November 19, 1998

Before RUSSELL,* WIDENER, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.
_____

*Judge Russell heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel pursuant to 28 U.S.C. § 46(d).

**COUNSEL**

**ARGUED:** William Carlton Ingram, Jr., FLOYD & JACOBS, L.L.P., Greensboro, North Carolina, for Appellant Granata; Danny Thomas Ferguson, Winston-Salem, North Carolina, for Appellant Carroll. Douglas Cannon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendants Charles D. Granata and Richard Warren Carroll were indicted in the Middle District of North Carolina on one count of conspiracy to disconnect, reset and alter motor vehicle odometers and conspiracy to transport in interstate commerce false, forged, or altered motor vehicle certificates of title (Count One), [1] and 29 counts of altering and causing or aiding and abetting the altering of the odometers of 29 individual vehicles (Counts Two through Thirty).[2] A jury convicted both defendants of all counts. Carroll was sentenced to 46 months' imprisonment with 3 years of supervised release and $1,500 special assessments. Granata was sentenced to 38 months' imprisonment with 3 years of supervised release and special assessments of $1,500. The defendants appeal their convictions and sentences.

Both defendants claim that the government failed to prove proper venue for prosecution on Counts Two through Thirty because the acts of altering the odometers took place only in Virginia or Maryland and altering of odometers is not a continuing offense.

_____

[1] 18 U.S.C. § 371, 15 U.S.C.§§ 1984 and 1990(c), 49 U.S.C. §§ 32704(2) and 32709(b), and 18 U.S.C. § 2314.
[2] 15 U.S.C. §§ 1984 and 1990(c) and 18 U.S.C. § 2.

2

Regardless of whether the underlying offense is continuing, both Carroll and Granata were charged with and convicted of aiding and abetting each of the substantive offenses in Counts Two through Thirty. The evidence shows that each of the 29 cars passed through the Greensboro Auto Auction in North Carolina through either General Leasing or Exchange Leasing, companies in which both Granata and Carroll played key roles.[3] Prosecution of the defendants was proper in North Carolina because their activities in that State were in furtherance of the substantive offenses for which they were charged in Counts Two through Thirty. United States v. Kibler, 667 F.2d 452, 455 (4th Cir.), cert. denied, 456 U.S. 961 (1982); see United States v. Cabrales, 66 U.S.L.W. 4423 (June 1, 1998) (venue improper because the counts at issue did not charge the defendant, among other things, as an aider or abettor).

Granata and Carroll also challenge their sentences, claiming that the district court erred in calculating the amount of loss attributed to each altered vehicle. While amount of loss is generally one of fact which we review for clear error, interpretation of sentencing guidelines terminology and the application of that terminology to a particular set of facts is reviewed de novo. United States v. Chatterji, 46 F.3d 1336, 1340 (4th Cir. 1995); United States v. Toler, 901 F.2d 399, 402 (4th Cir. 1990).

The amount of loss resulting from the fraudulent alteration of odometers is the actual, probable, or intended loss to victims of the fraud. U.S.S.G. § 2F1.1(b)(1) and comment. (n.7). The district court rejected the defendants' argument that the victims were the wholesale dealers and that the theoretical amount of loss of value to the dealer of an altered car should be $2,000 to $3,000. The court found that the actual victim in this case was the ultimate consumer or purchaser of

_____

[3] For example, Granata helped obtain the wholesale license for General Leasing, and was listed at the Greensboro Auto Auction as the authorized representative to buy and sell cars for that company. Granata also applied for and was listed as a partner for Exchange Leasing and was listed as an authorized representative for that company at the Newburgh, New York auto auction. Carroll was registered as an authorized representative for Exchange Leasing at the Greensboro Auto Auction and as an authorized representative for General Leasing at the Newburgh auto auction.

3

the car and that the reasonable loss per car was $6,260 which it rounded down to $6,000. This amount was based on evidence of the amount of markup and sale of the cars from one wholesaler to another and the ultimate purchase price paid by the consumer.

We agree with the district court's determination that in this case the victims were the ultimate consumers who overpaid for the altered car. The defendants point to no evidence that any interim wholesaler in this case failed to recoup an amount paid for the car and actually suffered a loss. The district court properly looked to the evidence of the identity of actual victims and the amount of actual loss, and we affirm on this issue.

Granata also claims that in determining his offense level, he should not be held responsible for 83 vehicles, but only for the 29 vehicles charged in the indictment and five others in which his name appeared somewhere on the paperwork. The sentencing guidelines provide that the offense level is determined on the basis of all acts committed, aided, or abetted by the defendant, and, in the case of jointly undertaken criminal activity, by all reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity, or all harm that results from or was the object of such acts. U.S.S.G. § 1B1.3. The record shows that more than 80 cars attributed to Granata were either bought or sold through General Leasing or Exchange Leasing. The district court found that General Leasing and Exchange Leasing were formed by the defendants for no legitimate purpose, that is, only for the purpose of washing titles and moving the sales from one wholesale dealer to another. The court found that the participation of Granata and Carroll was substantial and sufficient to make them conspirators "whose activities had to give them the opportunity of foresight and knowledge of what could be done, and what would be done, in using these outlets, Exchange and General Leasing." JA at 592. These findings are not clearly erroneous, and we affirm on this issue as well.

Both Granata and Carroll contend that the district court erred in enhancing their offense level by four levels under U.S.S.G. § 3B1.1(a) because they were not leaders or organizers of five or more people. The guidelines do not require that the defendant be an organizer or supervisor of five or more people as stated by the defen-

4

dants. Rather, the guidelines provide for a four-level increase if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). There is ample evidence in the record to support that the criminal activity was quite extensive. See U.S.S.G. § 3B1.1(a). Along with Ali Alami, Charles Granata, and Richard Carroll, the record supports that, at the least, Heller, Bill Bevans, Vadim Tertyshny, Alex Yavarri, Nick Azad, and John Armetta were participants in the scheme. Testimony and other evidence at trial showed that the activities of Granata and Carroll in organizing and conducting business through General Leasing and Exchange Leasing spanned at least five States, New York, Maryland, Virginia, North Carolina, and Alabama. Granata obtained wholesale licenses in Alabama and otherwise organized both General Leasing and Exchange Leasing, as well as Value Leasing and Auto Express in North Carolina, registered Exchange Leasing in Maryland, and altered titles and obtained new titles from the Virginia Department of Motor Vehicles for various dealerships. Carroll served as the authorized representative of General Leasing and Exchange Leasing in North Carolina and New York and bought and sold cars for the companies at auctions in those States. There was testimony that Joe Heller worked for Exchange Leasing and General Leasing to perform the rollback for $35 per car and evidence that John Armetta marketed rollbacked cars for them in the Baltimore area. The loss for which these defendants were held responsible was at least $480,000. The evidence supports that both defendants played major roles in this scheme, which evidence includes creating or acting, either or both, as the primary authorized representative of at least one of the fraudulent dealerships. The district court's finding that Granata and Carroll were organizers and leaders in the conspiracy is not clearly erroneous.

Next, Carroll claims that there is no evidence of an agreement and therefore the evidence is insufficient to support a conviction for the single conspiracy charged in Count One of the indictment. He contends that he and the others named in the indictment worked separately and received only a fee for each unlawful activity, and at best there were only multiple conspiracies between the alleged ringleader, Alami, and the others.

This argument has no merit. An agreement may be proved by circumstantial evidence alone. United States v. Burgos, 94 F.3d 849, 858

5

(4th Cir. 1996). There is ample evidence to support the government's position that there was an overall business venture or agreement to accomplish a common criminal objective. The evidence that various parties performed different functions to carry out the objective of the crime or that there were multiple transactions goes to the scope of the conspiracy. Such evidence does not negate the overwhelming evidence, even if circumstantial, of an agreement among the participants to carry out the common objectives as stated in the indictment. See United States v. Perez, 489 F.2d 51, 62 (5th Cir. 1973).

Along the same line, Carroll claims that the evidence was insufficient to support the verdict of conviction of the conspiracy charged in Count One of the indictment, which he calls a single conspiracy, which was that he and one Armetta and others had conspired, in violation of 18 U.S.C. § 371, to alter the odometers of hundreds of motor vehicles, in violation of 15 U.S.C. § 1984 and§ 1990 and 49 U.S.C. § 32703(2) and § 32709(b), and to knowingly transport in interstate commerce false certificates of title to motor vehicles, in violation of 18 U.S.C. § 2214. Even the abbreviated recitation of facts in this opinion shows that this claim is entirely without merit. This is annunciated by the fact that the jury instructions are not even included in the appendix. Neither are they complained about. We are thus of the opinion that the claim is without merit.

Finally, we do not review Carroll's claim on direct appeal of ineffective assistance of counsel because the facts are not adequately developed in the record. Carroll may pursue this claim on collateral review under 28 U.S.C. § 2255, should he be so advised.

6

The convictions and sentences of the defendants are accordingly

AFFIRMED.**4**

_____

**4** Following argument of the case, Carroll and Granata filed a supplemental brief and also moved that we follow the panel opinion in the case of United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), which they contend held that agreements to seek leniency or refrain from filing charges in return for testimony should result in the exclusion of that testimony, and that such was the holding of that case. See Singleton, 144 F.3d at 1359. The Tenth Circuit en banc court, however, on July 10, 1998, on its own motion, entered its order which vacated the panel decision and set the case for rehearing by the en banc court during November, 1998. With respect, we decline to follow the Singleton panel decision. First, it has been vacated; second, we are not aware of any such rule in this circuit; and last, we decline to impose such a rule, not intimating that we might do so in any event, especially in view of the fact that no such question was raised at trial. See McGowan v. Gillenwater, 429 F.2d 586 (4th Cir. 1970).

7