# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

MICHELLE DENISE CHAMBERS,
　　　　　　*Defendant-Appellant.*

No. 99-4735

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-97-924, CR-98-166)

Argued: January 22, 2001

Decided: March 20, 2001

Before WILKINS, MICHAEL, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Richard Andrew Culler, CULLER & CULLER, P.A., Charlotte, North Carolina, for Appellant. Kenneth Michel Smith, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney, Brian Lee Whisler, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

## OPINION

PER CURIAM:

Michelle Denise Chambers appeals the sentence imposed by the
district court following her plea of guilty to bank larceny, *see* 18
U.S.C.A. § 2113(b) (West 2000); bank fraud, *see* 18 U.S.C.A. § 1344
(West 2000); and money laundering, *see* 18 U.S.C.A.
§ 1956(a)(1)(B)(i) (West 2000). She contends that the district court
erred in refusing to group her bank larceny and money laundering
convictions and in holding her responsible for laundering more than
$6 million. Finding no merit in either of these claims, we affirm.

I.

On October 4, 1997, Chambers' husband, Steven, and several
coconspirators stole a truckload of currency from the Loomis Fargo
Armored Car facility in Charlotte, North Carolina. Chambers was a
member of the conspiracy and assisted with preparations for the theft.
After abandoning over $3 million for lack of space, the coconspirators
netted nearly $14 million.

The Chamberses concealed their share of the proceeds through a
variety of methods, which included enlisting accomplices to rent
safety deposit boxes. The Chamberses also deposited small amounts
of the stolen funds in several bank accounts. Chambers wrote checks
against one of these accounts to buy a number of high-priced items;
she then withdrew her money before any of the checks cleared.

Chambers subsequently was indicted and pled guilty to one count
of bank larceny, one count of bank fraud, and seven counts of money
laundering. At sentencing, the district court adopted the recommenda-
tions of the presentence report (PSR) and clustered Chambers' con-
victions into three groups—one for all of the money laundering
convictions, and one "group" each for the bank larceny and bank

fraud convictions. *See United States Sentencing Guidelines Manual* §§ 3D1.1(a)(1), 3D1.2 (1998). The court also adopted the offense-level calculations recommended for each group in the PSR. These calculations included an eight-level enhancement for the money laundering convictions based on an estimate that Chambers' relevant conduct involved "at least $8,750,000.00." J.A. 149; *see* U.S.S.G. § 2S1.1(b)(2)(I) (providing for an eight-level enhancement for laundering activities involving more than $6 million). Ultimately, the court sentenced Chambers to 92 months imprisonment.

## II.

Chambers contends that the district court erred in refusing to group her bank larceny conviction with her money laundering convictions and in holding her responsible for more than $6 million worth of money laundering conduct. The first issue entails the application of law to undisputed facts, so we review the decision of the district court de novo. *See United States v. Toler*, 901 F.2d 399, 402 (4th Cir. 1990). With respect to the second issue, we will not overturn the findings of the district court unless they were clearly erroneous. *See United States v. Dawkins*, 202 F.3d 711, 714 (4th Cir.), *cert. denied*, 120 S. Ct. 1989 (2000).

## A.

Chambers' claim concerning the grouping of offenses implicates U.S.S.G. § 3D1.2, which provides in pertinent part:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> . . .
>
> (b)  When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
>
> . . .

> (d)    When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Chambers contends that her bank larceny conviction (which arose from the Loomis Fargo heist) and her money laundering convictions (which arose from efforts to conceal proceeds from the heist) involved the same victim and therefore should have been grouped under § 3D1.2(b). Alternatively, she asserts that these offenses constituted "ongoing or continuous" criminal conduct within the meaning of U.S.S.G. § 3D1.2(d). Because we see no connection among these offenses other than the fact that the laundered money was acquired during the larceny, and because that connection is insufficient to justify grouping, we deny relief.

Section 3D1.2(b) provides for grouping if two or more offenses (1) "involve the same victim" and (2) are "connected by a common criminal objective or . . . a common scheme or plan." U.S.S.G. § 3D1.2(b). The offenses here satisfy neither of these requirements.

For purposes of § 3D1.2(b), the term "victim" refers to the person who was the primary target of the offense or, when society at large is the victim, to the societal interest harmed by the offense; "indirect or secondary victims" are specifically excluded. *Id.* comment. (n.2). The victim of Chambers' bank larceny was Loomis Fargo. Chambers asserts that her money laundering activities also victimized Loomis Fargo by impeding recovery of the stolen funds. We disagree; Loomis Fargo may have been an indirect victim, but society is the primary victim of money laundering undertaken for purposes of concealment. *See, e.g.*, *United States v. Napoli*, 179 F.3d 1, 7-8 (2d Cir. 1999), *cert. denied*, 528 U.S. 1162 (2000); *United States v. O'Kane*, 155 F.3d 969, 972-73 (8th Cir. 1998). *See generally United States v. Bartley*, 230 F.3d 667, 675-76 (4th Cir. 2000) (Wilkinson, C.J., dissenting) (analyzing the societal interests affected by money laundering). It is significant, moreover, that laundering stolen funds will always impair recovery efforts by the theft victim; thus, adopting Chambers' view would compel grouping in virtually all cases involving laundering of

stolen (or fraudulently acquired) funds, in contravention of "common sense and . . . § 3D1.2's mission to incrementally punish significant additional criminal conduct." *United States v. Porter*, 909 F.2d 789, 793 (4th Cir. 1990).

Furthermore, even if Chambers' bank larceny and money laundering offenses did involve the same victim, they did not share a "common criminal objective" or arise from "a common scheme or plan." U.S.S.G. § 3D1.2(b). We presume that all of Chambers' conduct was motivated by the desire to be wealthy, but the term "common criminal objective" requires "a more particularized definition of the defendant's intent." *United States v. Pitts*, 176 F.3d 239, 245 (4th Cir.), *cert. denied*, 528 U.S. 911 (1999). Here, Chambers manifested one criminal objective when committing the bank larceny (stealing money) and a separate objective when laundering the proceeds (avoiding detection). Furthermore, because the bank larceny and the money laundering involved separate conduct and different personnel, there is no evidence of a unifying scheme. *See id.* at 244-45 (listing factors relevant to grouping decisions, including "persons involved" and "means used"). Thus, Chambers cannot satisfy any of the requirements of § 3D1.2(b).

For the same reasons, Chambers' request for grouping under § 3D1.2(d) is unavailing. Just as these crimes were not connected by a "common scheme," U.S.S.G. § 3D1.2(b), they were not "ongoing or continuous in nature," U.S.S.G. § 3D1.2(d). Rather, the record shows that the Chamberses executed one plan to steal money from Loomis Fargo and then implemented a separate plan (involving a separate group of confederates) to launder money. Thus, these crimes were not sufficiently integrated to justify grouping. *Cf. United States v. Walker*, 112 F.3d 163, 167 (4th Cir. 1997) (holding that grouping was appropriate under § 3D1.2(d) because laundered funds were used to promote an ongoing fraudulent enterprise). We therefore affirm the refusal to group Chambers' bank larceny conviction with her money laundering convictions.

## B.

Chambers next contends that she should not have received an eight-level enhancement under U.S.S.G. § 2S1.1(b)(2), which pro-

vides for graduated enhancements in money laundering cases based on the amount of money involved. The PSR recommended an eight-level enhancement because a "conservative estimate of the amount of money involved in the money laundering portion of this scheme [was] at least $8,750,000.00." J.A. 149; *see* U.S.S.G. § 2S1.1(b)(2)(I). Chambers claims that the conduct for which she was charged and convicted involved only $5.7 million, and therefore she should have received only a seven-level enhancement. *See* U.S.S.G. § 2S1.1(b)(2)(H). We hold that the determination of the district court was not clearly erroneous.

Chambers initially asserts that the district court engaged in double counting. This argument arises from a statement by the district court that $500,000 used by the Chamberses to purchase a house should be added to the $5.7 million figure proffered by defense counsel. The district court subsequently retracted this statement, however.

Instead of relying on the money used to purchase the house, the district court adopted the recommendation of the PSR that Chambers be held liable for both the $5.7 million she was directly involved in laundering and an additional $3 million her husband laundered separately. *See* U.S.S.G. § 1B1.3(a)(1)(B) (providing that a defendant's "relevant conduct" includes "all reasonably foreseeable acts and omissions of others in furtherance of . . . jointly undertaken criminal activity"). Chambers contends that it is inconsistent to hold her responsible for Steven's conduct while refusing to group the bank larceny conviction with the money laundering convictions. We perceive no inconsistency. The district court found, in effect, that the Chamberses jointly executed two separate plans, one to steal money from Loomis Fargo and another to conceal the proceeds. This determination was not clearly erroneous.

### III.

For the foregoing reasons, we hold that the district court did not err in its sentencing determinations. We therefore affirm Chambers' sentence.

*AFFIRMED*